No. 3--06--0370

Filed May 16, 2007.

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| In re A.W., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| a Minor | ) | Peoria County, Illinois, |
| | ) | |
| (The People of the State of | ) | |
| Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | No. 05--JA--227 |
| | ) | |
| v. | ) | |
| | ) | |
| Eugene W., | ) | Honorable |
| | ) | David J. Dubicki, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE O'BRIEN delivered the opinion fo the court:

_____


The circuit court of Peoria County adjudicated A.W. (minor)
neglected and made him a ward of the court.  The respondent-
father, Eugene W., appeals, arguing that the trial court erred
by: (1) ruling that the doctrine of collateral estoppel barred
him from attacking prior indications of sexual abuse brought
against him by the Department of Children and Family Services
(DCFS); (2) finding that he remained unfit to care for the minor
because he was not allowed to complete the sex offender
counseling; and (3) finding that the minor was neglected.  We

vacate the judgment and remand for further dispositional proceedings.

FACTS

The record reflects that the minor was born on October 5, 2005. On October 11, 2005, the State filed a petition for neglect with regard to the minor. In the petition, the State alleged, inter alia, that the minor's environment was injurious to his welfare because: (1) the respondent had been found unfit by the trial court in a previous case in 2004, and there had been no subsequent finding of fitness; and (2) DCFS had indicated the respondent for sexual molestation in 1998 and 2002, and he had not completed sex offender counseling.

On January 4, 2006, the court commenced a hearing on the State's petition. The State submitted certified copies of a prior adjudication of neglect with regard to the minor's older sibling. These documents showed that the State had filed a petition for neglect with regard to the older sibling in March 2004. The petition included the same allegations of sexual molestation against the respondent as those made in the instant petition. The documents further showed that on July 20, 2004, the trial court entered its written order finding, inter alia, that the State had proved the allegations of sexual molestation by a preponderance of the evidence. Subsequently, the court in the prior case had assigned to the respondent the following

2

permanency goals: (1) perform random drug drops, and (2) attend and complete domestic violence classes and sex offender counseling.

The adjudicatory hearing continued on April 5, 2006. The caseworker testified that the respondent had completed a drug and alcohol assessment. No treatment was recommended. He had been referred for counseling, but he did not attend regularly. He had also completed a sex offender assessment in October 2005.

The respondent testified that he had successfully completed a domestic violence class. He acknowledged that he had missed "a couple" of counseling appointments. He had a small residence, but he was waiting to receive a section 8 voucher so he could move into a larger space. He stated that he was aware of the indications of sexual molestation made against him by DCFS. He had been referred to sex offender counseling. He further stated that he had not been convicted of any sex crimes.

The State then objected to any further testimony with regard to the DCFS indications, arguing that the issue had been litigated in the prior adjudication. The court compared the pleadings of the prior neglect proceeding with those in the instant proceeding, and it found that the allegations were identical. The court noted the prior court's finding that the allegations had been proven by a preponderance of the evidence. It further noted that this court had affirmed the court's

3

findings on appeal. Thus, the trial court ruled that the respondent was barred by collateral estoppel from litigating the matter of the DCFS indications of sexual molestation.

The trial court found that the State proved by a preponderance of the evidence that the minor was living in an injurious environment. Specifically, the court found that the respondent had not overcome the finding of unfitness in the prior case because he had not completed sex offender counseling. Accordingly, the court adjudicated the minor neglected.

At the dispositional hearing on April 26, 2006, the respondent testified that he had been performing drug drops as ordered in the previous case. All of the drops showed negative for the presence of narcotics. He stated that he had attended sex offender therapy, but that it had not been successful. The therapist would not continue the program unless the respondent admitted to having committed a sex offense. The respondent refused to do so. He asked the therapist if there was another way to continue the counseling without an admission. He sought to discuss the strategies to avoid future offenses, but the therapist told him that he had to first admit to being a sex offender. When the respondent again refused to incriminate himself, the therapist discharged him unsuccessfully from the program.

With regard to this issue, a report prepared by the

4

respondent's counselor after he had been discharged from sex offender counseling stated the following:

> "We discussed at great length that [his therapist] dismissed him from treatment due to his refusal to work on issues. He states that he never committed the offenses in the indicated reports and is not an offender, and they will not treat him unless he states he did. Encouraged [*sic*] him to return to treatment to at least learn something from the sessions like he did in the domestic violence classes, even though he never admitted to being domestically violent."

The report further stated that the respondent had agreed to return to sex offender therapy, "if [the therapist] will allow it."

The respondent concluded his testimony by describing his visits with the minor. He stated that he brought food, clothes and toys for the minor, and the visits always went well. He further stated that he would be able to provide housing for the minor. The caseworker testified that the visits between the respondent and the minor went very well. She had no suspicions that the respondent was using illegal substances.

The trial court found the respondent unfit to care for the minor based on the prior adjudication of the respondent as unfit and the fact that no subsequent finding of fitness had been made. It made the minor a ward of the court and awarded guardianship to

5

DCFS. In explaining its decision, the court relied solely on the respondent's unsuccessful discharge from sex offender counseling as the basis for its finding of unfitness. It noted that the respondent blamed the therapist, and that it did not have the benefit of the therapist's testimony. However, the court concluded that the respondent "has done a number of things, but he is unfit because he still has not overcome *** a main hurdle which led to these cases being in care."

The respondent appeals the trial court's order.

ANALYSIS

1. Collateral Estoppel

The respondent first asserts that the trial court erred in barring him from introducing evidence to defend against the prior allegations of sexual abuse brought by DCFS. Specifically, he argues that the doctrine of collateral estoppel did not apply to the instant case because the prior adjudication was made in a proceeding involving different minors.

The well-established threshold requirements for the application of collateral estoppel are: (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. Gumma v. White, 216 Ill. 2d 23, 833 N.E.2d 834

6

(2005).  For purposes of the application of collateral estoppel, finality requires that the potential for appellate review must have been exhausted.  Ballweg v. City of Springfield, 114 Ill. 2d 107, 499 N.E.2d 1373 (1986).

In the instant case, the respondent had presented a defense against the same allegations of sexual abuse in a prior juvenile neglect proceeding.  In the prior proceeding, the trial court entered its judgment on the merits, finding that the State had proved the allegations of sexual molestation by a preponderance of the evidence.  The respondent was a party to the prior adjudication.  Further, the respondent appealed the trial court's order.  Therefore the court properly ruled that the doctrine of collateral estoppel barred the respondent from introducing evidence to rebut the allegations.

## II. Self-Incrimination

The respondent also contends that his constitutional right against self-incrimination was violated when he was barred from completing sex offender therapy because he would not admit to any offenses.

The fifth amendment to the United States Constitution states that "[n]o person *** shall be compelled in any criminal case to be a witness against himself."  U.S. Const., amend. V.  A communication must be testimonial, incriminating and compelled in order to qualify for the fifth amendment protection.  Hiibel v.

7

<u>Sixth Judicial District Court of Nevada, Humboldt County</u>, 542 U.S. 177, 159 L. Ed. 2d 292, 124 S. Ct. 2451 (2004). "[T]he Fifth Amendment privilege against compulsory self-incrimination 'protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.' " <u>Hiibel</u>, 542 U.S. at 190, 159 L. Ed. 2d at 305, 124 S. Ct. at 2460, quoting <u>Kastigar v. United States</u>, 406 U.S. 441, 445, 32 L. Ed. 2d 212, 217, 92 S. Ct. 1653, 1656 (1972).

In the instant case, we are guided by our prior decision in <u>In re L.F.</u>, 306 Ill. App. 3d 748, 714 N.E.2d 1077 (1999). In that case, the trial court gave temporary custody of the respondent's children to DCFS and subsequently changed the permanency goal from "return home" to "substitute care pending termination of parental rights" following the death of a nonbiological child who was in the respondent's care. <u>L.F.</u>, 306 Ill. App. 3d 748, 714 N.E.2d 1077. The respondent argued that her fifth amendment right against self-incrimination was violated when the trial court changed the permanency goal because she would not comply with DCFS' requirement that she admit that she was responsible for the child's death. <u>L.F.</u>, 306 Ill. App. 3d 748, 714 N.E.2d 1077.

The court noted that this was a case of first impression in Illinois. <u>L.F.</u>, 306 Ill. App. 3d 748, 714 N.E.2d 1077. After

8

looking to other states for guidance, the court recognized that there was a very fine, but important, distinction between taking steps to terminate parental rights based specifically on a refusal to waive a right against self-incrimination and doing so based upon a parent's failure to comply with an order for meaningful therapy. L.F., 306 Ill. App. 3d 748, 714 N.E.2d 1077. The other states' courts ruled that the fifth amendment bars a state from ordering a parent to choose between losing his or her parental rights or waiving his or her right to self-incrimination. L.F., 306 Ill. App. 3d 748, 714 N.E.2d 1077, citing In re Clifford M., 6 Neb. App. 754, 577 N.W.2d 547 (1998); Mullin v. Phelps, 162 Vt. 250, 647 A.2d 714 (1994); In re Welfare of J.G.W., 433 N.W.2d 885 (Minn. 1989); In re Welfare of J.W., 415 N.W.2d 879 (Minn. 1987).

The L.F. court held that the trial court violated the respondent's right against self-incrimination. L.F., 306 Ill. App. 3d 748, 714 N.E.2d 1077. The court further noted that the reasoning employed in the case applied to permanency review hearings as well as termination of parental rights hearings. L.F., 306 Ill. App. 3d 748, 714 N.E.2d 1077.

The matter in the instant case arises out of permanency goals established by the court in a prior case with regard to the instant minor's older sibling. We apply the same principle as the court in L.F. because the trial court's findings of neglect

9

and unfitness were based on its review of the respondent's progress toward completing the permanency goals established in the prior case. Thus, although the instant case arises from a different procedural stage than L.F., the circumstances that form the basis of the respondent's argument are the same.

In addition, we note that the manner in which the respondent was compelled to waive his constitutional right against self-incrimination is less overt than that in L.F., but the effect is the same. Here, DCFS did not make it a goal for the respondent to admit to an offense. Thus, he was not compelled to make an admission in court. However, the therapist referred by DCFS made the respondent's admission of guilt a complete hurdle to completion of the court-ordered therapy. Therefore, the respondent here was forced to make the same choice as the respondent in L.F.: he had to admit to having committed a sex offense in order to complete the last task or risk losing his child.

We further find the case of In re Welfare of J.W. instructive on this issue. J.W., 415 N.W.2d 879. In that case, after removing the minors from their parents' care, the trial court ordered a treatment plan where the respondents were required to explain to a psychologist the death of their two-year-old nephew who was in their care. J.W., 415 N.W.2d 879. The order provided that the minors remain in foster care until

10

the parents completed the treatment plan. J.W., 415 N.W.2d 879. In holding that the order violated the parents' fifth amendment rights, the court noted that a state cannot compel testimony by threatening to impose potent sanctions, such as the loss of parental rights, unless the respondent surrenders his or her constitutional privilege. J.W., 415 N.W.2d 879.

The court in L.F. anticipated that the same issue may arise upon its remand of the case for further proceedings. There the court warned:

> "[W]e note that the [trial] court may, upon remand, order DCFS to structure a service plan that requires the respondent to engage in effective therapy. While DCFS may not compel therapy treatment that would require the respondent to incriminate herself, it may require the respondent to otherwise undergo treatment. Therapy, however, which does not include incriminating disclosures may be ineffective and ineffective therapy may hurt the respondent's chances of regaining her children. As was noted in In re J.W., 'these consequences lie outside the protective ambit of the Fifth Amendment. '[Citation.]" L.F., 306 Ill. App. 3d at 754.

The violation of the respondent's fifth amendment right in the instant case occurred because he was not allowed to complete the sex offender therapy without admitting to an offense.

11

According to his counselor, he was able to successfully complete the domestic violence course even though he refused to admit to any violence. We also note that the respondent had cooperated with DCFS in completing every other task assigned to him. In an attempt to complete the therapy, the respondent inquired as to whether his therapist could counsel him on strategies to avoid offending in the future in spite of his refusal to admit to an offense. We recognize that the treatment may not be effective in the absence of an admission of misconduct. However, the respondent was deprived of an opportunity to complete the sex offender therapy.

In fashioning the appropriate remedy for this violation, we also recognize that the loss of custody is "essentially 'the stick' the court is holding over respondent's head to get compliance with another of its orders: counseling." In re A.A., 315 Ill. App. 3d 950, 953, 735 N.E.2d 179, 181 (2000). In A.A., the court further noted that the respondent's failure to complete the ordered counseling while maintaining a close relationship with his children gave his family a false hope of reunification. A.A., 315 Ill. App. 3d 950, 735 N.E.2d 179. That false hope was not in the best interest of the children. A.A., 315 Ill. App. 3d 950, 735 N.E.2d 179. In the instant case, there was no evidence of what, if any, efforts the respondent made to complete the ordered counseling once he was denied by the DCFS therapist. The

12

respondent still had an obligation to complete the sex offender counseling, but there is no evidence to show whether he had other means of therapy than the DCFS therapist. While we uphold the trial court's finding of unfitness, we vacate the court's order and remand the case to reopen the dispositional hearing for the limited purpose of allowing the respondent to propose his own service plan that would allow him to complete the sex offender counseling without incriminating himself.

Based upon our ruling, we need not address the respondent's next contention that the trial court's finding of neglect was against the manifest weight of the evidence. The finding of neglect was based, in part, on the respondent's unsuccessful discharge from sex offender therapy. However, even if we removed that basis, the remaining bases would have been sufficient to support the court's finding of neglect. Thus, we allow the neglect finding to stand, and we remand this case for further dispositional proceedings with instructions.

## CONCLUSION

For the reasons stated, the judgment of the circuit court of Peoria County is vacated, and we remand the cause for further dispositional proceedings with instructions to allow the respondent to present his own service plan with regard to completing the court-ordered counseling.

Vacated and remanded.

13

CARTER, J., concurring.

JUSTICE SCHMIDT, dissenting:

I would affirm the trial court in its entirety. We are sending this case back and, in essence, telling respondent to go find some evidence that he did not offer before. Had he suggested alternative counseling below and had the trial judge refused to even consider it, that would be another matter. That is not what happened here. I do not believe it is our function to say to a party, "Here is what you should have done. Now go back, get a new expert witness who will say you are fit, and try it again." Even if respondent finds a counselor who says he can treat him without an admission, DCFS will undoubtedly continue to refute respondent's fitness and the trial judge will have to decide which opinion on fitness is more credible. On what other kind of case do we vacate judgments on the basis that one party or the other ought to have a chance to produce an expert that the party did not offer prior to the judgment? The trial court did not err. Therefore, we should affirm.

14