NOTICE

Decision filed 02/11/09. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-07-0127

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* P.M.C. and J.L.C., Minors | ) | Appeal from the Circuit Court of Marion County. |
| (The People of the State of Illinois, Petitioner-Appellee, v. Donald C., Respondent-Appellant). | ) ) ) ) ) ) ) | Nos. 01-JA-2 & 01-JA-3 Honorable Patrick J. Hitpas, Judge, presiding. |

_____

PRESIDING JUSTICE WEXSTTEN delivered the opinion of the court:

The respondent, Donald C., appealed the circuit court's order finding him unfit to parent his minor children–J.L.C., who was born on December 9, 1996, and P.M.C., who was born on June 13, 1998. See 750 ILCS 50/1(D)(m) (West Supp. 2005). The circuit court also determined that the children's mother, Ruth H., was unfit, but she did not appear at the unfitness hearing and did not appeal the circuit court's determination.

On appeal to this court, the respondent argued that the circuit court erred in finding that he had made no reasonable progress toward the return of J.L.C. and P.M.C. See 750 ILCS 50/1(D)(m)(ii) (West Supp. 2005). We affirmed in part and reversed in part. *In re P.M.C.*, 376 Ill. App. 3d 867 (2007).

On November 26, 2008, the Illinois Supreme Court issued a supervisory order directing us to vacate our previous decision in this cause (*In re P.M.C.*, 376 Ill. App. 3d 867 (2007)) and to reconsider our judgment in light of its decision in *In re A.W.*, 231 Ill. 2d 92 (2008). *In re P.M.C.*, 229 Ill. 2d 668 (2008). Having done so, we conclude that *In re A.W.* supports our initial disposition.

1

FACTS

On January 16, 2001, the State filed petitions for adjudications of wardship, alleging that J.L.C. and P.M.C. were abused minors because the respondent had committed predatory criminal sexual assault upon J.L.C. After a temporary custody hearing, the circuit court found probable cause to believe that the minors were abused, found an urgent and immediate necessity to remove the children from the respondent's home and place them in shelter care, and granted temporary custody of the children to the Department of Children and Family Services (DCFS). After an adjudicatory hearing on July 2, 2001, and August 10, 2001, the circuit court, by docket entry, entered its order of adjudication finding that J.L.C. and P.M.C. were abused minors. At the dispositional hearing on October 25, 2001, the parties consented to an agreed disposition that DCFS place the children with the respondent's parents. Accordingly, the circuit court entered its dispositional order, finding J.L.C. and P.M.C. abused and placing guardianship and custody with DCFS.

On March 31, 2005, the State filed a petition for the termination of parental rights. In the petition, the State alleged that the respondent was unfit to parent J.L.C. and P.M.C. because, pursuant to section 1(D)(m)(i) of the Adoption Act (750 ILCS 50/1(D)(m)(i) (West Supp. 2005)), he had failed to make reasonable efforts to correct the conditions that were the basis for the removal of the children and because, pursuant to sections 1(D)(m)(ii) and 1(D)(m)(iii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii), (D)(m)(iii) (West Supp. 2005)), he had failed to make reasonable progress toward the return of the children to him within the relevant nine-month periods.

On November 6, 2006, at the hearing on the petition to terminate the respondent's parental rights, the respondent testified that he attended every scheduled visit with his children. The respondent also testified that, following the dispositional hearing, he continuously attended sex-offender counseling sessions. The respondent denied committing

2

any sexual offense against J.L.C. The respondent testified that during therapy sessions with Ray Swift, Todd Holsapple, Dale Spitler, Linda Stover, and his therapy group, he admitted that he had sexually abused J.L.C. The respondent testified that he admitted the offense in therapy only because his attorney had advised him to do so.

Linda Stover, a licensed clinical professional counselor, testified that she specialized in sex-offender treatment and evaluation. Stover testified that she first treated the respondent on March 25, 2003. Stover testified that the respondent received a certificate of completion in July 2003 for successfully completing the sex offenders' outpatient program. Stover testified that at that time, she felt as though the respondent could evaluate boundary violations for himself. Stover testified, however, that in a July 30, 2003, letter written to the respondent's probation officer (regarding an intimidation charge unrelated to the present case), she stated that the respondent had completed his probation and would no longer be seeking treatment, but she suggested that the respondent continue treatment to address anger-management, relationship, and relapse-prevention issues. Stover testified that after July 29, 2003, the respondent returned for treatment on February 10, 2004, but that she had no further contact with the respondent after August 24, 2004.

Dr. Alexander James testified that he performed a psychological evaluation of the respondent and a bonding assessment involving the respondent and his children. The respondent stipulated to Dr. James's qualifications and to the admission of Dr. James's two reports. Dr. James's psychological evaluation report, dated August 25, 2004, was based on an August 9, 2004, evaluation of the respondent.

Todd Holsapple, a mental health therapist for the Community Resource Center (CRC), testified that the respondent began level one of sex-offender therapy on September 7, 2004, when the respondent transferred from a previous provider, and that Holsapple began treating the respondent in February 2006. Holsapple testified that in the course of

3

maintaining a counseling position with the respondent, Holsapple reviewed only CRC's history information on the respondent. Holsapple was unaware of the respondent's denials of abuse.

Lenora Williams, a previous case manager with Illinois Mentor, testified that she had managed J.L.C.'s and P.M.C.'s cases from June 2004 until April 2006. Similarly, Amanda Wagner, also a case manager with Illinois Mentor, testified that she had managed J.L.C.'s and P.M.C.'s cases, monitoring the respondent's progress in sex-offender therapy, since April 2006.

In replying to the respondent's motion for a directed finding, the State indicated that it was only pursuing termination based on the respondent's failure to make reasonable efforts to correct the conditions that were the basis for the removal of the children (750 ILCS 50/1(D)(m)(i) (West Supp. 2005)) and that it was not pursuing termination based on the respondent's failure to make reasonable progress toward the return of the children (750 ILCS 50/1(D)(m)(ii), (D)(m)(iii) (West Supp. 2005)). Specifically, the attorney for the State stated:

> "[A]s I indicated in the beginning of the hearing, and as I indicated to [the respondent's attorney] plenty [of] times, we were only pursuing failure to correct conditions, not on the reasonable progress grounds. Otherwise, this hearing would have been a lot longer."

When the circuit court asked whether the State was moving to dismiss the reasonable-progress allegations in the petition, the attorney for the State replied: "I guess, yes. We were not proceeding on that."

In its order entered on November 30, 2006, the circuit court noted that while the respondent admitted to several counselors that he had abused his daughter, he testified that these statements were untrue and had been asserted only to please the counselors; that the

4

respondent remained at level one of treatment and could not reach level two without taking responsibility for the sex offense; and that Dr. James's psychological evaluation clearly indicated that the respondent did not view the sex-offender information as applying to him. The circuit court concluded that although the respondent had participated "in a considerable amount of sex [-]offender[-]specific counseling since the date of adjudication," the evidence in its totality suggests that the counseling was of no value to the respondent because he denied sexually abusing his daughter. Accordingly, the circuit court found that because the respondent failed to participate in meaningful counseling to address the sex-offender issues, he failed to make reasonable efforts to correct the conditions that were the basis for removal (750 ILCS 50/1(D)(m)(i) (West Supp. 2005)) and failed to make reasonable progress toward the return of the child to him within nine months of adjudication (750 ILCS 50/1(D)(m)(ii) (West Supp. 2005)). Therefore, the circuit court determined that the respondent was unfit.

The best-interests hearing was held on January 24, 2007. In its order entered on February 9, 2007, the circuit court found clear and convincing evidence that it was in J.L.C.'s and P.M.C.'s best interests to terminate the respondent's and Ruth H.'s parental rights. On March 5, 2007, the respondent filed a notice of appeal.

ANALYSIS

The Juvenile Court Act of 1987, as amended, provides a two-stage process whereby parental rights may be involuntarily terminated. 705 ILCS 405/2-29 (West 2006). Under this bifurcated procedure, the State must make a threshold showing of parental unfitness based upon clear and convincing evidence and, thereafter, a showing in a separate hearing that it is in the child's best interests to sever the parental rights. *In re Adoption of Syck*, 138 Ill. 2d 255, 276 (1990). Accordingly, a finding of unfitness may lead to the termination of parental rights if the court finds it to be in the best interests of the minor. *In re C.R.*, 221 Ill. App. 3d 373, 379 (1991).

5

We accord the trial court's finding of parental unfitness great deference because it is in the best position to make factual findings and credibility assessments. *In re D.L.*, 326 Ill. App. 3d 262, 269 (2001). We will reverse the trial court's finding only if it is against the manifest weight of the evidence. *In re D.L.*, 326 Ill. App. 3d at 270. "A finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident." *In re D.L.*, 326 Ill. App. 3d at 270.

The Adoption Act specifies the following as grounds for a finding of parental unfitness:

"(m) Failure by a parent (i) to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent[] or (ii) to make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected or abused minor ***[] or (iii) to make reasonable progress toward the return of the child to the parent during any 9-month period after the end of the initial 9-month period following the adjudication of neglected or abused minor ***." 750 ILCS 50/1(D)(m) (West Supp. 2005).

Either the failure to make reasonable efforts to correct the conditions or the failure to make reasonable progress toward the child's return can be a ground for an adjudication of unfitness. *In re M.A.*, 325 Ill. App. 3d 387, 391 (2001). Only one ground of unfitness needs to be proved by clear and convincing evidence for the court to find a parent unfit. *In re J.A.*, 316 Ill. App. 3d 553, 564 (2000).

In the present case, after the unfitness hearing on November 6, 2006, the circuit court found that because the respondent failed to meaningfully participate in sex-offender counseling, he failed to make reasonable efforts to correct the conditions that were the basis for the children's removal (750 ILCS 50/1(D)(m)(i) (West Supp. 2005)), which was the basis asserted by the State during the hearing. Notwithstanding the State's attempted waiver of the

6

reasonable-progress ground, the circuit court also found that the respondent had failed to make reasonable progress toward the return of the children within nine months of the adjudication of abuse (750 ILCS 50/1(D)(m)(ii) (West Supp. 2005)). See *In re D.F.*, 208 Ill. 2d 223, 229 (2003) (the version of section 1(D)(m) in effect at the time of the fitness hearing is applicable). The first nine-month period to assess a parent's fitness begins on the date the court adjudicates the minor neglected or abused and applies to both grounds relied on by the circuit court in the present case: the reasonable-efforts ground enumerated in subsection (D)(m)(i) and the reasonable-progress ground enumerated in subsection (D)(m)(ii). *In re D.F.*, 208 Ill. 2d at 243; 750 ILCS 50/1(D)(m)(i), (D)(m)(ii) (West Supp. 2005).

Although, at the respondent's unfitness hearing, the State presented the testimony of the respondent's therapists to demonstrate that he had failed to participate in "meaningful therapy," these therapists began treating the respondent after the relevant 2001-2002 time period, the nine-month period beginning on the date of the circuit court's adjudication of abuse on August 10, 2001 (August 2001 to May 2002). The only evidence at the unfitness hearing regarding the respondent's efforts or progress during the relevant time period consisted of the respondent's testimony that he attended scheduled visits with his children and that he consistently attended sex-offender counseling but made insincere admissions in sex-offender therapy. Accordingly, the sole remaining basis for the circuit court's findings–that the respondent had failed to make reasonable efforts to correct the conditions that were the basis for removal (750 ILCS 50/1(D)(m)(i) (West Supp. 2005)) or reasonable progress toward the return of the children within nine months after the adjudication of abuse (750 ILCS 50/1(D)(m)(ii) (West Supp. 2005))–was the respondent's testimony that his admissions during the relevant time period were insincere and that he did not sexually abuse J.L.C.

The fifth amendment provides that no person "shall be compelled in any criminal case

to be a witness against himself." U.S. Const., amend V. This provision of the fifth amendment applies to the states through the fourteenth amendment. *Allen v. Illinois*, 478 U.S. 364, 92 L. Ed. 2d 296, 106 S. Ct. 2988 (1986). This prohibition permits a person to refuse to testify against himself at a criminal trial in which he is a defendant and permits him "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 38 L. Ed. 2d 274, 281, 94 S. Ct. 316, 322 (1973). The state may not impose a substantial penalty against an individual who elects to exercise his fifth amendment privilege against self-incrimination. *Minnesota v. Murphy*, 465 U.S. 420, 434, 79 L. Ed. 2d 409, 424, 104 S. Ct. 1136, 1146 (1984). If the state, expressly or by implication, imposes a penalty for the exercise of the privilege, the failure to assert the privilege is excused. *Murphy*, 465 U.S. at 435, 79 L. Ed. 2d at 424, 104 S. Ct. at 1146.

Accordingly, the fifth amendment bars a juvenile court from compelling a parent to admit to a crime that could be used against him in a subsequent criminal proceeding by threatening the loss of parental rights. See *In re A.W.*, 231 Ill. 2d at 108; *In re L.F.*, 306 Ill. App. 3d 748, 753 (1999); see also *Mullin v. Phelps*, 162 Vt. 250, 268, 647 A.2d 714, 724-25 (1994); *In re M.C.P.*, 153 Vt. 275, 300, 571 A.2d 627, 641 (1989); *In re Welfare of J.G.W.*, 433 N.W.2d 885, 886 (Minn. 1989); *In re Welfare of J.W.*, 415 N.W.2d 879, 883 (Minn. 1987); *In re Clifford M.*, 6 Neb. App. 754, 765-66, 577 N.W.2d 547, 554-55 (1998); *In re Amanda W.*, 124 Ohio App. 3d 136, 141, 705 N.E.2d 724, 727 (1997). However, there is a fine, but important, distinction between terminating parental rights based specifically upon a parent's refusal to admit that which he denies, thereby forcing him to waive the fifth amendment privilege against self-incrimination, and terminating parental rights based upon a parent's failure to comply with an order to undergo meaningful therapy or rehabilitation, because a parent's refusal to admit sexual abuse inhibits meaningful therapy. The latter is

constitutionally permissible, while the former is not. See *In re A.W.*, 92 Ill. 2d at 107; *In re L.F.*, 306 Ill. App. 3d at 753; see also *Mullin*, 162 Vt. at 268, 647 A.2d at 724-25; *In re M.C.P.*, 153 Vt. at 300, 571 A.2d at 641; *In re Welfare of J.G.W.*, 433 N.W.2d at 886; *In re Welfare of J.W.*, 415 N.W.2d at 883; *In re Clifford M.*, 6 Neb. App. at 765-66, 577 N.W.2d at 554-55; *In re Amanda W.*, 124 Ohio App. 3d at 141, 705 N.E.2d at 727. "Accordingly, a trial court may order a service plan that requires a parent to engage in effective counseling or therapy[] but may not compel counseling or therapy requiring the parent to admit to committing a crime." *In re A.W.*, 231 Ill. 2d at 108.

In *In re A.W.*, the supreme court held that the father failed to prove that his fifth amendment right against self-incrimination was violated when the circuit court relied on the father's failure to complete sex-offender counseling as a reason for finding the father unfit. *In re A.W.*, 231 Ill. 2d at 110. The supreme court found it significant that the circuit court did not specifically require the father to admit wrongdoing and did not order him to complete a specific program requiring him to admit abuse. *In re A.W.*, 231 Ill. 2d at 108. The supreme court also noted that the father presented no evidence of other available treatment programs offering sex-offender counseling without requiring an admission of sexual abuse and that the father had refused to return to sex-offender counseling to see if progress was possible without making any admission of past abuse. *In re A.W.*, 231 Ill. 2d at 109-10. The supreme court concluded that the record failed to support a holding that the circuit court's order had the effect of requiring the father to incriminate himself. *In re A.W.*, 231 Ill. 2d at 110.

This case is distinguishable from *In re A.W.* Because the therapists' testimony did not involve the relevant time period to assess the respondent's efforts or progress in therapy, the sole remaining basis for the circuit court's order finding the respondent unfit involved the respondent's refusal at the hearing to admit the abuse and his corresponding testimony that his admissions in therapy during the relevant time period were insincere. In its order, the

9

circuit court concluded that the "considerable amount of sex[-]offender[-]specific counseling" was "of no value whatsoever to [the respondent because] he denie[d] any sexual abuse to his daughter." Considering the lack of evidence regarding how the respondent's refusal to admit the sexual abuse inhibited his meaningful therapy during the relevant time period, the circuit court's determination of unfitness was improper because it was based on the respondent's refusal to admit to the sexual abuse and had the effect of requiring the respondent to incriminate himself.

We note that the State alleged in the petition for the termination of parental rights that the respondent had failed to make reasonable progress toward the children's return during any nine-month period after the end of the initial nine-month period following the adjudication of abuse. See 750 ILCS 50/1(D)(m)(iii) (West Supp. 2005). However, the State asserted during the unfitness hearing that it was not pursuing the termination of the respondent's parental rights based on the respondent's failure to make reasonable progress toward the return of the children, and the circuit court did not rely on subsection (D)(m)(iii) to find the respondent unfit. Accordingly, we decline to affirm on this basis. See generally *In re Chilean D.*, 304 Ill. App. 3d 580, 582 (1999) (where the State asked that the matter not proceed to the best-interests phase and that parental rights not be terminated, the State effectively withdrew the petition and voluntarily dismissed the statutory action).

We also note that the State is not prejudiced from filing another petition to terminate the respondent's parental rights on lawful grounds and presenting evidence to support that petition, if and when it becomes appropriate. To avoid a fifth amendment infringement and to encourage the respondent to participate in "meaningful therapy" in the present case, the State may offer the respondent protection from the use of any compelled statements and any evidence derived from those answers in a subsequent criminal case against him. See *Lefkowitz v. Cunningham*, 431 U.S. 801, 805, 53 L. Ed. 2d 1, 6-7, 97 S. Ct. 2132, 2135-36

10

(1977).  The respondent may also offer evidence that refusing to admit that which he denies may not inhibit "meaningful therapy."

CONCLUSION

For the foregoing reasons, we again reverse that part of the judgment of the circuit court of Marion County finding the respondent, Donald C., unfit.  We affirm that part of the judgment finding Ruth H. unfit.


Affirmed in part and reversed in part.


SPOMER and STEWART, JJ., concur.

NO. 5-07-0127

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| *In re* P.M.C. and J.L.C., Minors | ) | Appeal from the Circuit Court of Marion County. |
| | ) | |
| (The People of the State of Illinois, Petitioner-Appellee, v. Donald C., Respondent-Appellant). | ) | |
| | ) | Nos. 01-JA-2 & 01-JA-3 |
| | ) | |
| | ) | Honorable Patrick J. Hitpas, |
| | ) | Judge, presiding. |

**Opinion Filed**:      February 11, 2009

**Justices**:      Honorable James M. Wexstten, P.J.

               Honorable Stephen L. Spomer, J., and
               Honorable Bruce D. Stewart, J.,
               Concur

**Attorney for Appellant**      Bill J. Milner, Law Office of Bill J. Milner, 109 E. Main Street, P.O. Box 395, Salem, IL 62881

**Attorneys for Appellee**      Hon. Matthew Wilzbach, Marion County State's Attorney, P.O. Box 157, Salem, IL 62881; Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, Patrick D. Daly, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864