NOTICE
Decision filed 10/09/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250534-U

NO. 5-25-0534

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* KOHLE H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Randolph County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 23-JA-4 |
| | ) | |
| Kavon H., | ) | Honorable |
| | ) | Jennifer M. Becker-Roscow, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court.
Justices Barberis and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Respondent's appeal of the determination of unfitness is rendered moot, as he contested only one of four findings, leaving the remaining three unchallenged. The circuit court's conclusion that terminating his parental rights was in the best interests of the minor child was not against the manifest weight of the evidence, given that sufficient evidence was presented during a hearing in accordance with the best-interest factors.

¶ 2                                I. BACKGROUND

¶ 3    On February 8, 2023, the Randolph County State's Attorney (State) filed a petition for adjudication of wardship concerning Kohle H., born on February 7, 2023. The petition alleged that respondent Kavon H. was the presumed father. Further, it asserted that Kohle H. was a neglected or abused minor pursuant to section 2-3(1)(c) of the Juvenile Court Act of 1987 (705 ILCS 405/2-

1

3(c) (West 2022)), as his urinalysis, conducted one day after birth, indicated a positive test for amphetamines. Additionally, the petition noted that the mother[1] had previously given birth to two infants exposed to substances and that she did not have custody of either child. The State requested that Kohle H. be declared a ward of the court and placed in shelter care.

¶ 4    On February 9, 2023, a temporary custody order was issued, placing the minor in shelter care and appointing the Department of Children and Family Services (DCFS) as his temporary guardian. Respondent was ordered to participate in paternity testing, which eventually determined that he was the biological father of Kohle H.

¶ 5    On May 1, 2023, an adjudicatory order was entered, determining that Kohle H. was a neglected and abused minor. Subsequently, on May 15, 2023, a dispositional order was entered placing Kohle H. under the guardianship of DCFS.

¶ 6    An agency report submitted on October 30, 2023, indicated that Kohle H. was in traditional foster care and had established a strong bond with the caregivers. The recommended services for respondent included maintaining communication with the agency, undergoing assessments for mental health, substance abuse, and domestic violence, as well as securing legal income and stable housing. He was rated as unsatisfactory in all the recommended goals. A permanency review order was entered on November 13, 2023, establishing a permanency goal of return home in 12 months.

¶ 7    An agency report filed on May 9, 2024, indicated that the case had successfully passed legal screening on March 6, 2024. It also noted that respondent remained unsatisfactory with regard to his recommended goals. Furthermore, the report stated that respondent had been incarcerated, with a projected discharge date of January 14, 2026. It was also observed that he had not visited Kohle H. since March 23, 2023. During that visitation, he arrived one hour late and left

_____

[1]The mother is not a party to this appeal.

one hour early. Additionally, when the agency attempted to conduct a phone conference with him in prison, he chose to opt out of the call. The recommended goal was substitute care pending the determination of termination of parental rights.

¶ 8 On August 26, 2024, a permanency review order was entered, changing the goal to substitute care pending the determination of termination of parental rights. Subsequently, on December 17, 2024, a petition to terminate parental rights was filed. The petition alleged that respondent was unfit on the grounds that he (1) failed to maintain a reasonable degree of interest, concern, or responsibility (750 ILCS 50/1(D)(b) (West 2022)); (2) failed to make reasonable efforts to correct the conditions that were the basis of the removal of the minor (750 ILCS 50/1(D)(m)(i) (West 2022)); (3) failed to make reasonable progress toward the return of the minor during any nine months, citing the periods of May 1, 2023, to February 1, 2024; February 1, 2024, to November 1, 2024; November 1, 2024, to "August 1, 202[5]"; and "August 1, 202[5]" to the date of the hearing (750 ILCS 50/1(D)(m)(ii) (West 2022)); and (4) deserted the minor (750 ILCS 50/1(D)(c) (West 2022)).

¶ 9 A fitness and best interest report was submitted on January 27, 2025. Respondent had failed to attend any administrative case reviews, which were scheduled every six months. He did not complete an integrated assessment nor address any of his required services. He visited with Kohle H. only once, and he had not seen him since March 23, 2023. The report recommended the termination of respondent's parental rights and a change in Kohle H.'s permanency goal to adoption.

¶ 10 A subsequent fitness and best interest report filed on April 21, 2025, noted that respondent had been incarcerated from February 23, 2024, to March 28, 2025, due to possession of methamphetamine. Following his release from incarceration, respondent tested positive for

methamphetamine and subsequently entered inpatient rehabilitation. On April 16, 2025, respondent inquired about Kohle H.'s well-being for the first time since November 21, 2023. The recommendations in this report were identical to those in the previous report.

¶ 11    The matter was scheduled for a fitness hearing on May 19, 2025. Respondent was not present, as he was in rehabilitation at the time. His attorney requested a continuance, which the State opposed on the basis that the case had already been continued on four prior occasions, three of which were at respondent's request. The most recent continuance order stated that no further continuances would be granted. The circuit court denied the request for a continuance, emphasizing that the case needed to keep moving forward.

¶ 12    Amanda Jondro, the caseworker, testified that in addition to being the caseworker for Kohle H., she had served as the caseworker for two of his siblings. Respondent was the father of one of those siblings, and both of those siblings have been adopted.

¶ 13    Respondent's services included completing an integrated assessment, undergoing a DNA test, maintaining communication with the agency, obtaining assessments for substance abuse, mental health, and domestic violence, and ensuring legal income and stable housing. Although he did not complete the integrated assessment, he did undertake the DNA test. During the five weeks preceding the hearing, respondent had maintained contact with the agency; however, prior to that period, he had not. Respondent was incarcerated from February 2024 to March 2025, and as of the date of the hearing, respondent was in a rehabilitation facility due to methamphetamine use following his release from the Illinois Department of Corrections (DOC). All of respondent's services were rated as unsatisfactory, and he had not demonstrated any progress during any of the nine-month periods alleged in the petition. Jondro was aware that respondent had recently

4

participated in certain programs at his rehabilitation center, but she had not been provided with any certificates.

¶ 14 Jondro visited Kohle H. once a month, and he was doing well, with no medical concerns. He was two years old and attended daycare. She recommended that the goal be changed to adoption.

¶ 15 The certified convictions concerning his controlled substance conviction and his possession of methamphetamine were admitted into evidence. After hearing closing arguments, the circuit court found that respondent was unfit. On May 19, 2025, an order of parental fitness was entered, stating that the State had proven, by a preponderance of the evidence, all four allegations contained in the petition, and that respondent was unfit.

¶ 16 A best interest report was filed on May 22, 2025, indicating that Kohle H. did not have a bond with respondent, and noting that respondent had only visited him once since his birth. Kohle H. had remained in the same home since being placed there following his release from the hospital. These foster parents provided for his emotional, physical, and behavioral needs, and he was deeply bonded to them. This foster family was the only one he had known; he referred to the foster parents as "mom" and "dad," and to the other children in the home as his siblings.

¶ 17 On June 9, 2025, a best interest hearing was conducted. Jondro testified that she had been assigned as Kohle H.'s caseworker since his birth in February 2023. She explained that Kohle had been placed in traditional foster care and exhibited no developmental issues. The foster family was meeting all of his needs, and no concerns were raised. He enjoyed sports and trains and played with his foster siblings.

¶ 18 The foster parents maintained contact with another family who adopted one of the biological siblings, thereby preserving a relationship between the two children. Kohle H. attended

church on weekends, and the foster family was very engaged in the community. He was deeply attached to and bonded with the foster family, experiencing a sense of security with them. The foster family did not have any other individuals of African-American heritage present in the home; however, the family was taking steps to understand Kohle H.'s specific needs. Jondro opined that the least disruptive placement option for Kohle H. was with the current foster family. They were dedicated to adopting Kohle H., and she believed it was in his best interests that respondent's parental rights be terminated.

¶ 19    Kohle H. was not taken to visits during respondent's inpatient rehabilitation period because it was deemed to be too distressing for Kohle H. Regarding respondent's incarceration in DOC, Jondro sent multiple letters to him there, but she never received any response. She had been informed that respondent was actively engaged in his treatment, although no documentation was ever provided to confirm this.

¶ 20    Respondent testified that he was in residential treatment and had been so for approximately one month. He enrolled in a fathers and support family program the day before the hearing, which included elements of parenting that were intended to assist him in parenting Kohle H. He completed a social model addiction rehabilitation treatment, which was a 30-day intensive inpatient program. Additionally, he completed a mental health assessment and a substance abuse assessment, and he was actively engaging in services based on these evaluations. He was employed at Tyson and was in the process of seeking stable housing. He expressed a desire to parent Kohle H. and requested additional time to complete his prescribed services.

¶ 21    Upon his release from DOC, he tested positive for drugs within one week, and opted to attend a rehabilitation program. He had been incarcerated in DOC only once, but he had been detained in the county jail multiple times for controlled substances.

6

¶ 22    The guardian *ad litem* stated that he visited the foster parents' home and observed that they had "a good family congenial relationship for little children." He was very impressed with the foster parents and believed they provided a suitable environment for the children. They were doing a good job meeting Kohle H.'s needs. He indicated that, prior to incarceration, respondent had approximately one year during which he could have been involved in Kohle H.'s life, but he elected not to.

¶ 23    After hearing closing arguments, the circuit court discussed several of the best-interest factors and then granted the State's petition to terminate the respondent's parental rights. On June 9, 2025, an order terminating parental rights was entered, indicating in part that it was in the best interests of Kohle H. to terminate respondent's parental rights. On July 7, 2025, respondent timely filed a notice of appeal.

¶ 24                                    II. ANALYSIS

¶ 25    Respondent contends on appeal that the circuit court erred in its finding that he was unfit due to his failure to make reasonable progress toward the return of the minor. He maintains that his incarceration was for a crime unrelated to the minor and that his services were not accessible within DOC, "making it impossible for the Appellant to complete all services until his release." Following his release, he sought treatment at a rehabilitation facility. He requests that we "take into consideration the limits of his abilities to complete services due to his incarceration and lack of programs available." He further asserts that, for the same reasons, it would not be in the child's best interests for his parental rights to be terminated. He requests that the circuit court's findings be reversed.

¶ 26    In response, the State initially emphasizes that respondent has contested only one of the four findings concerning his unfitness. It further observes that a circuit court's determination of

7

unfitness will be upheld if at least one of the statutory grounds specified in the petition is affirmed. Since respondent did not challenge the remaining three grounds, the State contends that he has forfeited any arguments related thereto; moreover, it asserts that "those findings of unfitness by the trial court stand." The State argues that this renders respondent's appeal fatal in that "[s]ince only one statutory ground of unfitness need to be alleged and proven, respondent implicitly concedes, by not challenging the remaining grounds, that the State proved the remaining grounds by clear and convincing evidence." The State requests that this court consider the respondent's appeal moot, given that the unchallenged grounds remain standing even if the finding on the contested ground is reversed.

¶ 27    In the alternative, the State contends that respondent did not complete an integrated assessment, substance abuse assessment, mental health assessment, or domestic violence assessment, and that his incarceration does not absolve him from making reasonable progress. It further maintains that the State has demonstrated, by a preponderance of the evidence, that it is in the child's best interests to terminate respondent's parental rights. Kohle H. has resided in the same foster home since birth, and his foster parents are meeting his needs. He maintains a strong bond with the foster family, who are also very affectionate towards him. The State requests that the circuit court's findings be affirmed.

¶ 28    Respondent filed a reply brief, but reasserted the same argument contained in his original brief.

¶ 29    Proceedings concerning the termination of parental rights are governed by the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2022)) and the Adoption Act (750 ILCS 50/1 *et seq.* (West 2022)). "Generally, under the Juvenile Court Act, where a child is adjudicated abused, neglected or dependent, and the State seeks to free the child for adoption, unless the parent

8

consents, the State must first establish that the parent is 'unfit' under one or more of the grounds set forth in the Adoption Act." *In re D.T.*, 212 Ill. 2d 347, 352 (2004); 705 ILCS 405/2-29 (West 2022); 750 ILCS 50/1(D) (West 2022). "A trial court's finding of parental unfitness will not be reversed unless it is against the manifest weight of the evidence. *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 48.

¶ 30    In the present case, respondent was found unfit based on four distinct allegations: (1) failure to maintain a reasonable degree of interest, concern, or responsibility; (2) failure to make reasonable progress; (3) failure to make reasonable efforts; and (4) desertion. However, on appeal, respondent contests only the finding of unfitness based on his failure to make reasonable progress. He does not challenge or discuss the unfitness determinations related to the other three allegations. The State contends that respondent's failure to address these additional allegations results in a forfeiture of any arguments concerning them. We agree. Any issue not raised in a brief is deemed forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Consequently, the failure of respondent to argue the circuit court's findings of unfitness regarding the three other grounds renders these findings unchallenged and moot. *In re D.L.*, 326 Ill. App. 3d 262, 268 (2001) (citing *In re D.L.*, 191 Ill. 2d 1, 8 (2000)). Effectively, regardless of the merits of the circuit court's finding based on unreasonable progress, respondent remains unfit due to the other three grounds. "Only one ground of unfitness needs to be proved by clear and convincing evidence for the court to find a parent unfit." *In re P.M.C.*, 387 Ill. App. 3d 1145, 1149 (2009). Furthermore, since respondent remains unfit regardless of our analysis, his objection concerning the sole contested finding of unfitness is moot. "When the resolution of an issue will have no practical effect on the existing controversy, it is moot." *Oak Grove Jubilee Center, Inc. v. City of Genoa*, 347 Ill. App. 3d 973, 977 (2004). "As a general rule, courts in Illinois do not decide moot questions, render advisory

9

opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). Accordingly, we decline to review respondent's argument regarding his only challenged finding of unfitness as his argument is moot.

¶ 31 After the finding of unfitness, the circuit court has to determine whether it is in the best interests of the minors to terminate parental rights. *In re D.T.*, 212 Ill. 2d at 352; 705 ILCS 405/2-29(2) (West 2022). At this stage, the State had to prove, by a preponderance of the evidence, that termination of parental rights was in the child's best interests. *In re Deandre D.*, 405 Ill. App. 3d 945, 953 (2010). "[T]hat determination will not be reversed unless it is against the manifest weight of the evidence ***." *In re Deandre D.*, 405 Ill. App. 3d at 953. "A best-interest determination is against the manifest weight of the evidence only when the opposite conclusion is clearly the proper result." *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 65.

¶ 32 To determine whether termination of respondent's parental rights was in the child's best interests, the circuit court was to consider the following factors:

> "(a) the physical safety and welfare of the child, including food, shelter, health, and clothing;
>
> (b) the development of the child's identity;
>
> (c) the child's background and ties, including familial, cultural, and religious;
>
> (d) the child's sense of attachments, including:
>
> (i) where the child actually feels love, attachment, and a sense of being valued (as opposed to where adults believe the child should feel love, attachment, and a sense of being valued);
>
> (ii) the child's sense of security;
>
> (iii) the child's sense of familiarity;

10

(iv) continuity of affection for the child;

(v) the least disruptive placement alternative for the child;

(e) the child's wishes and long-term goals;

(f) the child's community ties, including church, school, and friends;

(g) the child's need for permanence which includes the child's need for stability and continuity of relationships with parent figures and with siblings and other relatives;

(h) the uniqueness of every family and child;

(i) the risks attendant to entering and being in substitute care; and

(j) the preferences of the persons available to care for the child." 705 ILCS 405/1-3(4.05) (West 2022).

¶ 33    Here, the testimony indicates that Kohle H. has been residing in the same foster home since birth. The foster parents are addressing all of his needs, and he has been fully integrated into the family as one of their own. He regards the foster siblings as his own. He does not exhibit any developmental issues and is currently attending daycare.

¶ 34    Similarly, the best interest report indicated that Kohle H. is bonded with his foster family, but not with respondent. Kohle H. seeks comfort, love, and assistance from his caregivers, and the report observed that he is "comfortable and well-adjusted in the home." In essence, Kohle H. is thriving in his current residence, which he regards as his family and has only known as such.

¶ 35    The circuit court, in rendering its decision, analyzed the best-interest factors. For instance, it noted that Kohle H. identifies with the foster family and considers it his own. He has a sense of attachment to the foster family and is very secure with them. The circuit court indicated that Kohle H. needs permanency and stability, and he is getting that with the foster family.

11

¶ 36 In contrast, respondent was only recently released from incarceration, and within one week, he engaged in the use of illegal substances, leading to his admission to inpatient rehabilitation. During his imprisonment, he did not avail himself of any services, and before his incarceration, he had met his child only once. "Once evidence of parental unfitness has been found, *all* of the parents' rights must yield to the best interests of the child." (Emphasis added.) *In re T.G.*, 147 Ill. App. 3d 484, 488 (1986). Applying this principle to the facts of the case leads to the determination that it is in the best interests of the child to terminate the parental rights of respondent.

¶ 37 " 'A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident.' " *In re Deandre D.*, 405 Ill. App. 3d at 953 (quoting *In re Arthur H.*, 212 Ill. 2d 441, 464 (2004)). Based on a review of the entire record, there is nothing to support respondent's argument that the circuit court's finding that it was in the best interests of the minor to terminate his parental rights was against the manifest weight of the evidence.

¶ 38                                  III. CONCLUSION

¶ 39 For the foregoing reasons, we affirm the Randolph County circuit court's orders of May 19, 2025, and June 9, 2025.

¶ 40 Affirmed.