**In the Matter of the WELFARE OF J.W. and A.W.**

**Nos. C9–87–165, C5–87–194.**

Supreme Court of Minnesota.

Dec. 4, 1987.

Warren R. Sagstuen, Asst. Public Defender, Minneapolis, for Mother. Thomas H. Shiah, Minneapolis, for Father.

Ann Stiehm Ahlstrom, Asst. Co. Atty., Minneapolis, for Hennepin County.

Randy Decker, Wright Walling, Minneapolis, guardian ad litem.

SIMONETT, Justice.

This appeal raises questions about the protection to be afforded parents of neglected children who invoke their Fifth Amendment privilege with respect to a court-ordered treatment plan requiring them to make incriminating disclosures as part of their rehabilitation therapy. We reverse, noting, however, that the privilege does not protect against the possible adverse consequences of a failure to undergo effective therapy.

The case is here for the second time. The parents' first appeal was from the trial court's decision finding their two children to be dependent and neglected. We affirmed that decision. *Matter of Welfare of J.W.*, 391 N.W.2d 791 (Minn.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 899, 93 L.Ed.2d 850 (1987). This appeal is from the trial court's rehabilitation treatment plan following the disposition hearing.

The facts may be briefly stated. The appellant parents have two children, J.W. and A.W. In mid-March 1984, when J.W. was 2½ years old and A.W. was 1½, the parents were also taking care of another child, their 2–year–old nephew. On March 15, appellants brought the nephew to the hospital suffering from a severe blow to the abdomen. The injury, causing massive internal hemorrhaging, proved fatal. Hennepin County took immediate measures to have J.W. and A.W. placed in temporary foster care.

When questioned about the nephew's death in pretrial depositions, the parents invoked their constitutional privilege against self-incrimination. At the dependency and neglect hearing in November 1984, the court imposed discovery sanctions for the parents' failure to answer the deposition questions. The matters questioned about were deemed admitted and the parents were prohibited from presenting evidence or examining adverse witnesses on the matters deemed admitted. The court found that the fatal abdominal blow had not been accidentally inflicted and had required the strength of an adult; that the child had been with no adults other than the parents, who said they had observed nothing unusual; that the parents had withheld from the hospital an accurate medical history of the nephew's injury; that the parents had a history of violence

with each other; and that either or both parents were responsible for the nephew's death. The trial court found that J.W. and A.W. were at high risk for physical abuse in the family home and both parents had demonstrated inability to protect the children. J.W. and A.W., therefore, were declared to be dependent and neglected under Minn.Stat. § 260.015, subds. 6(d), 10(b) (1984). Legal custody was awarded to Hennepin County and the two children were placed in foster care pending further order. The hearing on a disposition plan was continued pending the parents' appeal from the neglect determination. On appellate review it was held that the court's discovery sanctions did not offend either the constitutional privilege against self-incrimination or due process. *Matter of Welfare of J.W., supra.*[1]

On October 14, 1986, about 2 years after the first hearing, the trial court held the disposition hearing. The court adopted the family rehabilitation program recommended by Hennepin County. The court ordered the parents to have separate psychological evaluations and to follow the recommendations contained in the evaluations; to attend and successfully complete domestic abuse counseling; to participate in a parents' education group; and to sign releases of information for all professionals involved. The order provided that the children remain in foster care "until all of the above goals are met." The parents were given visiting rights.

The court-ordered treatment plan, however, contained one further provision, which has resulted in this second appeal. The order requires the parents not only to obtain psychological evaluations, but "[s]uch evaluations will include the explanation of the death of [the 2–year–old nephew], consistent with the medical findings."

At the disposition hearing, the state's attorney inquired of the parents whether they would undergo the psychological evaluations as ordered. If not, "[i]t would be our intention," stated the attorney, "to file a [parental] termination, and I think it's only fair for the parents to know that * * *." The parents, however, have continued to assert their Fifth Amendment privilege. On appeal, they claim that the disposition order violates their constitutional right against compelled self-incrimination because they are being penalized with the threat of losing their children as the price for invoking the Fifth Amendment. They also claim that the disposition order lacks proper findings.

The parents having appealed to the court of appeals, the respondent county petitioned for accelerated review by this court. We granted the petition.

## I.

Dispositions of children determined to be neglected and dependent are governed by Minn.Stat. § 260.191 (1986) and by Minn.R. P.Juv.Ct. 62. Subdivision 1a of the statute requires any disposition order to contain written findings of fact to support the disposition and to explain in writing why the order serves the best interests of the child and what alternative dispositions were considered and why discarded. The appellant parents first contend that the trial court's disposition order fails to follow these statutory requirements. *See Matter of L.K.W.,* 372 N.W.2d 392 (Minn.App.1985).

█ The court's order does not expressly discuss alternative treatments considered nor does it have findings on why, after the passage of 2 years, J.W. and A.W. must remain separated from their parents. We think the court's decision sufficiently complies with the law. The trial court's order incorporates by reference its 1984 order which concluded that one or both of the parents was directly responsible for the violent death of the nephew. In its memo-

---

1. The court of appeals held that the discovery sanction deeming the unanswered questions to be admitted by the parents did not violate the privilege against self-incrimination, but that it was a denial of due process to deny the parents the right to offer other evidence and to cross-examine about the matters deemed admitted. *In* the Matter of J.W. and A.W., 374 N.W.2d 307 (Minn.App.1985). This court granted the state's petition for further review, reversing the court of appeals on the due process issue, and affirming the trial court's sanctions in their entirety. *Matter of Welfare of J.W.,* 391 N.W.2d 791 (Minn.1986).

randum, the court also indicates why the parents' proposed disposition was rejected. Although a more extensive statement of the reasons for the decision would have been preferable, we cannot say that the court's disposition order is clearly erroneous or fails to meet minimal statutory requirements.

## II.

If the parents comply with the court's order to explain to the psychologist the death of their 2–year–old nephew consistent with the medical findings of an intentional, severe blow to the child's abdomen, they may be incriminating themselves and be liable to criminal prosecution.[2] On the other hand, if the parents invoke their constitutional privilege against self-incrimination, they may, as they point out, lose their children. The parents contend, therefore, that the order requiring them to choose between their constitutional privilege and their children is in violation of their Fifth Amendment rights.

The Minnesota Court of Appeals recently had the same issue before it. *See Matter of Welfare of S.A.V.,* 392 N.W.2d 260 (Minn.App.1986). There the disposition order required the parents to acknowledge the causes of their children's injuries. A divided court of appeals panel upheld the order against the parents' claim that they were being penalized for invoking their privilege against self-incrimination. The court held that the parents' claim was premature; that no penalty was involved because the state had not yet threatened the parents with sanctions for refusing to waive the privilege. The court went on to say, in dictum, that if at some later time parental rights were terminated, this would not be "a sanction for exercise of a constitutional right, but simply the necessary result of failure to rectify parental deficiencies." *Id.* at 264. The trial court in this

case relied on *S.A.V.* and the state urges us to do the same.

"[W]hen a State compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered, that testimony is obtained in violation of the Fifth Amendment * * *." *Lefkowitz v. Cunningham,* 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1977). The threat itself must be real and imminent. In *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), for example, the defendant had made incriminating statements of another crime to his probation officer because he understood, as a condition to his probation, that he had to be truthful with the officer. The United States Supreme Court held there was no threat of a penalty in this situation because the probation officer had not told the defendant his probation would be revoked if he refused to make the incriminating disclosures. Because the state had not taken this "extra, impermissible step," the defendant's privilege did not protect him. Indeed, it was the state's position in *Murphy* that assertion of the privilege would not have been grounds for revocation of probation.

In this case, the state's attorney expressly stated for the record that if the parents persisted in invoking their constitutional privilege, "[i]t would be our intention to file a termination."[3] This threat is genuine, direct, and immediate, and the penalty threatened is a "potent sanction." True, a petition for termination has not yet been filed, but this makes the threat no less real. It is the threat itself, not necessarily its implementation, that triggers the Fifth Amendment. It is true, too, that termination of parental rights would not be automatic if the parents refuse to cooperate with the court-ordered treatment plan, but that refusal would be a substantial, rele-

---

**2.** In August 1986, the grand jury returned a "no bill" against the parents.

**3.** Counsel for the county said:
And I think it's important to have an indication of [appellants'] intentions [about complying with the treatment plan] today because council is right. It would be our intention to

file a termination, and I think it's only fair for the parents to know that in making a decision as to whether they're going to continue to invoke the Fifth or whether they are going to proceed to cooperate with what we ask them. [T. 21.]

vant factor in determining whether or not parental rights should be terminated.[4] See, e.g., Matter of Welfare of A.K.K., 356 N.W.2d 337, 340 (Minn.App.1984) (refusal of mother to participate in further rehabilitation plans a factor in terminating her parental rights). The privilege against compelled self-incrimination will not abide any attempt, "regardless of its ultimate effectiveness," to coerce a waiver of one's constitutional immunity. Gardner v. Broderick, 392 U.S. 273, 279, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968).

■ We hold, therefore, that the parents' exercise of their constitutional privilege against compelled self-incrimination is not premature; that an impermissible penalty has been imposed on invoking the privilege; and that the protection afforded by the privilege has been activated. This leads to the next question, namely, the nature of the protection afforded.

## III.

The critical issue here is not whether a privilege exists but how far the mantle of its protection extends. What is the penalty the state may not exact because of the claimed privilege?

■ We hold that the trial court's order, to the extent it requires appellants to incriminate themselves, violates appellants' Fifth Amendment rights and is unenforceable. This means that appellants' noncompliance with the order requiring them to divulge details of the nephew's death to psychologists, cannot be used as grounds under Minn.Stat. § 260.221(5) (1986) for termination of parental rights nor for keeping J.W. and A.W. in foster care. Assertion of a constitutional right does not make

a person a less fit parent, any more than it makes a person a less good citizen. The state may not penalize the parents for noncompliance with the court order impinging on their privilege any more than the state could disqualify public contractors from public building contracts in Lefkowitz v. Turley, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed. 2d 274 (1973), or officers of political parties from holding office in Lefkowitz v. Cunningham, 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977).

But this is as far as the privilege extends protection. While the state may not compel therapy treatment that would require appellants to incriminate themselves, it may require the parents to otherwise undergo treatment.[5] Therapy, however, which does not include incriminating disclosures, may be ineffective; and ineffective therapy may hurt the parents' chances of regaining their children. These consequences lie outside the protective ambit of the Fifth Amendment.

It is clear, first of all, the privilege does not keep out the evidence that the appellants are responsible for their nephew's death. Indeed, that evidence is already in, including the incriminating admissions of the parents deemed admitted as discovery sanctions. The paramount need to protect the safety and well-being of J.W. and A.W. justified imposition of the discovery sanctions over the parents' claim of privilege. It is equally clear the privilege does not prohibit the state from initiating further measures for the safety and well-being of the children. The parents cannot enjoin the state from seeking court orders keeping the children in foster care, or, if the situation should require, from seeking ter-

4. Thus, Minn.Stat. § 260.221 (1986) provides:
   The juvenile court may, upon petition, terminate all rights of a parent to a child in the following cases:
      *    *    *    *    *    *
   (5) That following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination * * *.

5. The appellant wife points out the trial court found that one or both parents were responsible

for the death of the nephew. She argues this does not establish that she struck the blow injuring the child, and, therefore, if this alternative finding is correct, she is being required to undergo treatment she does not need and to disclose information she does not have. It is enough to observe that the trial court also found that both parents failed to protect the 2-year-old from the violence that proved fatal and hence both demonstrated a lack of ability to protect their own children.

mination of parental rights.[6] What the parents would like to claim, although of course they cannot, is that their responsibility for the death of a child and the inferences arising therefrom is privileged and may not be considered in determining their suitability as parents. But to state this proposition is to refute it. Not only does the proposition ignore the fact that the evidence of responsibility has already been received but it ignores the best interests of the children. This court has consistently emphasized "the best interests of the child" as an indispensable factor in making decisions that affect juveniles. *See, e.g., J.W., supra* at 794–95 (neglect); *Pikula v. Pikula,* 374 N.W.2d 705, 711 (Minn.1985) (custody); *In re Welfare of P.J.K.,* 369 N.W.2d 286, 292 (Minn.1985) (termination).

The parents, of course, are free to show they have changed their abusive and violent ways and can be good parents, so that the family may be reunited. But, says the trial court, "It is well settled that an explanation and recognition of the cause of the child's death is necessary before any meaningful change can occur to correct the behavior that lead [sic] to the abuse of [the nephew]." The parents may disprove the trial court's assumption, if they can,—and on this record, it is only an assumption—but it would seem a difficult task to engage in any effective therapy without confronting honestly one's own inadequacies in discussions with the psychologist. All we can say is that it remains to be seen whether a less than candid therapy will suffice to make appellants good parents. Admittedly, the parents are confronted with a dilemma, but it is not a dilemma that triggers the Fifth Amendment to the extent the parents would wish. In the lexicon of the Fifth Amendment, the risk of losing the children for failure to undergo meaningful therapy is neither a "threat" nor a "penalty" imposed by the state. It is simply a consequence of the reality that it is unsafe

for children to be with parents who are abusive and violent.

We add one further observation. If the state believes talking to the psychologist about the nephew's death would help appellants become good parents, the state could abandon its pursuit of criminal prosecutions and apply to the court for a grant of immunity for the parents. The parents could then, without fear of prosecution or prison, participate in meaningful therapy. With or without meaningful therapy, the parents may or may not be successfully rehabilitated, but the results can only be known after whatever treatment is tried. In any event, the state, having already received a "no bill" from the grand jury, has declined to seek immunity, at least so far.

We reverse and remand to the trial court to delete from its treatment plan the requirement that appellants must explain the death of their nephew to the psychologist.

Reversed and remanded.

POPOVICH, J., took no part in the consideration or decision of this case.

---

**6.** Minn.Stat. § 260.191, subd. 2 (1986), provides that disposition orders not exceed a 1–year period, but the trial court, on notice and hearing, may "renew the order for another year or make some other disposition of the case, until the individual is no longer a minor." Where it

reasonably appears that a condition of neglect or dependency will continue for a prolonged, indeterminate period, a proceeding to terminate parental rights may be indicated. *Matter of the Welfare of Clausen,* 289 N.W.2d 153, 155 (Minn. 1980).