RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3230-14T2
 A-3256-14T2

E.S.,

 Plaintiff-Respondent, APPROVED FOR PUBLICATION
 AS REDACTED
v. August 15, 2017

 APPELLATE DIVISION
H.A.,

 Defendant-Appellant.
_____________________________

E.S.,

 Plaintiff-Appellant,

v.

H.A.,

 Defendant-Respondent.
______________________________________________

 Argued February 28, 2017 – Decided August 15, 2017

 Before Judges Messano, Suter and Guadagno.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Family Part,
 Atlantic County, Docket No. FM-01-0562-09.

 Bruce P. Matez argued the cause for
 appellant in A-3230-14 and respondent in A-
 3256-14 (Borger Matez, P.A., attorneys; Mr.
 Matez, on the briefs).
 Patricia A. Darden argued the cause for
 respondent in A-3230-14 and appellant in A-
 3256-14 (Law Offices of Patricia A. Darden,
 attorneys; Ms. Darden, on the briefs).

 The opinion of the court was delivered by

MESSANO, P.J.A.D.

 Plaintiff E.S. and defendant H.A. are the parents of R.A.

(Richard), born in 2004.1 The parties separated in December

2008, and after a contentious period during which plaintiff

alleged acts of domestic violence (DV), and defendant

successfully litigated against her claims, the marriage ended in

a consent judgment of divorce (JOD) filed on September 8, 2009.

The parties were unable to resolve issues of custody and

parenting time prior to entry of the JOD.

 Earlier in 2009, plaintiff had contacted the Division of

Child Protection and Permanency (DCPP or the Division) regarding

Richard's inappropriate, overtly sexual behavior. The Division

began to investigate whether defendant had sexually abused

Richard. In April 2009, the parties entered into a consent

order in the matrimonial action that restored defendant's

parenting time, which had been suspended during the DV

proceedings. However, a subsequent domestic violence complaint

1
 We use initials and pseudonyms to maintain the confidentiality
of the parties and their child.

 2 A-3230-14T2
resulted in a temporary restraining order and renewed suspension

of defendant's parenting time.

 When the court dismissed the last of plaintiff's domestic

violence complaints following a multi-day trial that also ended

in September 2009, plaintiff thereafter successfully sought an

order to show cause temporarily suspending defendant's parenting

time until the judge could review the Division's records

regarding its investigation. On October 5, 2009, after

completing her review, the judge dissolved any restraints and

ordered resumption of defendant's parenting time in accordance

with the April 2009 order.

 On November 10, 2009, the Division advised defendant its

"investigation determined that abuse was substantiated for

sexual molestation with regard to [Richard]," and that "[y]ou

have been identified as a person responsible for the abuse."

Defendant apparently sought an administrative appeal because, on

February 19, 2010, the Division advised him the "finding of

abuse" as to one incident, July 27, 2009, was overturned.

However, the Division's finding of abuse as to a second incident

on July 6, 2009, remained in place. Defendant filed a request

for further review before the Office of Administrative Law

(OAL).

 3 A-3230-14T2
 Meanwhile, plaintiff sought reconsideration of the denial

of her earlier request to suspend all parenting time. By July

2010, the OAL hearing still had not taken place, nor had the

Division initiated a Title 9 or Title 30 action. The Family

Part judge overseeing the matrimonial action entered an order

setting a plenary hearing for October "on the issue . . .

whether it is in the best interests of . . . [Richard] that

parenting time with his father . . . should resume."

 No hearing took place, as issues and disputes continued to

arise regarding expert witnesses. In January 2011, the judge

appointed Dr. Jennifer L. Perry, Psy.D., as the court's expert,

and charged her with evaluating "when and in what manner it

w[ould] be in the best interest of . . . [Richard] to resume

parenting time with his father . . . ." The parties' litigious

conduct continued; it is unnecessary to detail the reasons for,

or results of, various court appearances that followed.

 In a February 2012 order, the judge provided copies of Dr.

Perry's reports to counsel, and the parties again appeared

before the court on April 2, 2012. Although the order entered

that day indicates the judge took "sworn testimony," there was

no testimony. After listening to the arguments of counsel, the

judge prohibited defendant "from any and all contact with"

Richard, "with the exception of the supervised visitation with

 4 A-3230-14T2
Dr. Perry or any other visitation ordered by th[e] court." The

judge permitted the parties to engage in discovery and set new

dates for a plenary hearing in July 2012.

 In May 2012, defendant withdrew his administrative appeal

of the Division's substantiated finding of abuse. No plenary

hearing took place during the summer of 2012. In November, a

different Family Part judge took over the litigation, and a

plenary hearing began in January 2013 and continued on non-

consecutive days until May. The parties thereafter submitted

written proposed factual findings and legal conclusions.

 On November 22, 2013, the judge issued an oral opinion on

the record explaining the reasons supporting his order filed

that day (the November 2013 order). The record reflects only

defense counsel was present; plaintiff's counsel had a court

appearance in another county, was running late and the judge

decided not to wait.

 The judge found by clear and convincing evidence, that

defendant had sexually abused Richard. The order granted

plaintiff sole legal and physical custody of Richard and denied

defendant parenting time. Section 3 of the order required that,

before making any application for parenting time, defendant

 shall comply with the requirements set forth
 by Dr. Jennifer Perry in her testimony,
 which include:

 5 A-3230-14T2
 a. Admission of wrongdoing;
 b. A psycho-sexual evaluation by
 a professional specializing in
 same; and
 c. Individual therapy.

In Section 4, the order further provided that, "[i]f and when

the [d]efendant completes the aforementioned requirements, he

may apply for consideration of parenting time through

Therapeutic Management of Reunification (TMR)."2

 In his oral opinion denying both parties' requests for

counsel fees, the judge noted plaintiff's counsel's request was

"vague," and he did not "know whether she's going to do

something. Some post judgment motion probably . . . ." The

November 2013 order simply denied both parties' requests for

counsel and expert fees.

 Plaintiff sought reconsideration, asking the order

specifically include the judge's finding that defendant had

sexually abused his son, and modifying the order to clarify that

her request for fees was denied without prejudice. The judge

granted the motion for reconsideration and entered the January

10, 2014 order (the January 2014 order) that stated defendant

"sexually abused" Richard, and denied plaintiff's request for

2
 TMR was described at trial as a visitation modality, utilizing
a "progression" of steps aimed at "rebuilding rapport" between
Richard and defendant.

 6 A-3230-14T2
fees without prejudice.3 The January 2014 order reiterated the

requirements of the November 2013 order imposing preconditions

on defendant's future applications for parenting time.

 Plaintiff submitted a request for fees. Defendant's

opposition never asserted an inability to pay. Rather,

defendant claimed plaintiff was solely responsible for the

plenary hearing, because she refused to accept Dr. Perry's

initial recommendation of TMR. Defendant asserted the "proper

forum for this case should have been . . . a proceeding

initiated by the Division."4

 After conducting a hearing, the judge rendered an oral

opinion and memorialized it in his June 9, 2014 order (the June

2014 order), requiring defendant to pay plaintiff $60,000 in

attorney fees and $2488 in costs in monthly installments of

$10,000. The order further provided that "these fees and costs

shall not be dischargeable in bankruptcy."

3
 It would appear from the order itself that defendant did not
oppose the motion for reconsideration, and defendant's appendix
does not include any opposition, if indeed any was filed.
4
 However, the record reveals that prior to the plenary hearing,
defense counsel urged the judge not to accept the substantiated
finding of abuse as dispositive of the issue. Because we are
rejecting the arguments defendant now raises and affirming the
judge's order in most respects, we choose not to address a
specific argument raised in plaintiff's opposition, i.e., that
defendant's "abandonment of his administrative law appeal is
fatal . . . to his attempts to overturn the finding that he
sexually abused" Richard.

 7 A-3230-14T2
 Defendant moved for reconsideration and plaintiff cross-

moved to enforce the award. In his certification, defendant,

for the first time, asserted an inability to pay counsel fees

awarded to plaintiff. The judge's August 29, 2014 order (the

August 2014 order) granted defendant's motion in part, reducing

the monthly installments to $500, but denying all other relief.

The judge denied plaintiff's request for counsel fees in

opposing the motion.

 Plaintiff filed another motion for reconsideration, seeking

an order reducing the counsel fee award to judgment, as well as

an award of additional fees for making the motion. Defendant

cross-moved, seeking a stay of the award and counsel fees for

opposing the motion. The judge's February 4, 2015 order (the

February 2015 order) denied plaintiff's motion and granted

defendant's motion in part, awarding him $2520 in counsel fees

as an offset against the award previously made in favor of

plaintiff.

 In A-3230-14, defendant appeals the November 2013 order

that followed the hearing; the January 2014 order that granted

plaintiff's motion for reconsideration and added additional

terms to the original order; the June 2014 order awarding

plaintiff counsel fees; and the August 2014 order largely

denying his request for reconsideration of the fee award.

 8 A-3230-14T2
 In A-3256-14, plaintiff appeals from the August 2014 order

reconsidering the fee award and the February 2015 order denying

her motion for reconsideration. We calendared the cases back-

to-back, and now consolidate them for purposes of issuing a

single decision.

 In A-3230-14, we reverse those provisions of the November

2013 and January 2014 orders that required defendant to "comply

with [certain] requirements" "[p]rior to" making "any

application for parenting time" with his son, but otherwise

affirm. We affirm in A-3256-14.

 As to A-3230-14

 [At the court's direction, Section I of its
 opinion, which concerns discrete issues, has
 been redacted from the published opinion
 because it does not meet the criteria set by
 R. 1:36-2(d) for publication. The published
 parts of the opinion continue as follows.]

 II.

 A.

 In Point II, defendant argues the provisions of the

November 2013 and January 2014 orders requiring his admission of

"wrongdoing" "[p]rior to" making "any application for parenting

time" violate his constitutional right against self-

incrimination. As a corollary argument, defendant claims the

judge erred in relying on Hoch's and Perry's opinions that his

admission of wrongdoing was a necessary predicate to TMR,

 9 A-3230-14T2
because they were "net" opinions unsupported by any indicia of

scientific reliability. In response, plaintiff only contends

defendant failed to raise the issue in the trial court, and

Richard's best interests require defendant's admission of abuse

before TMR can commence.

 Preliminarily, defendant's claim that the opinions

expressed by Hoch and Perry were net opinions lacks sufficient

merit to warrant discussion. R. 2:11-3(e)(1)(E). Defendant

also suggests Perry never conditioned parenting time, or

initiation of TMR, upon his admission of wrongdoing. However,

in responding to a question from the judge, Perry said:

 I would say that if . . . Your Honor
 determines that sexual abuse has occurred
 and a perpetrator is not willing to admit to
 that and get the services needed in order to
 prevent that — or reduce the likelihood of
 that occurring again, . . . there should be
 no visitation.

 Plaintiff is correct that defendant never raised a

constitutional challenge to conditioning future applications for

parenting time upon an admission of wrongdoing, and we

 adhere[] to th[e] long-standing principle[]
 . . . 'that our appellate courts will
 decline to consider questions or issues not
 properly presented to the trial court when
 an opportunity for such a presentation is
 available unless the questions so raised on
 appeal go to the jurisdiction of the trial
 court or concern matters of great public
 interest.'

 10 A-3230-14T2
 [State v. Robinson, 200 N.J. 1, 20 (2009)
 (quoting Nieder v. Royal Indem. Ins. Co., 62
 N.J. 229, 234 (1973)).]

"However, if the issue is of special significance to the

litigant, to the public, or to the achievement of substantial

justice, and the record is sufficiently complete to permit its

adjudication, we may consider it." Borough of Keyport v.

Maropakis, 332 N.J. Super. 210, 216 (App. Div. 2000); see also

Ricci v. Ricci, 448 N.J. Super. 546, 567 (App. Div. 2017)

(considering constitutional challenge to Family Part's award of

college costs because "clarification of the law is necessary");

J-M Mfg. Co. v. Phillips & Cohen, LLP, 443 N.J. Super. 447, 458

(App. Div. 2015) (considering argument raised for the first time

on appeal regarding application of the entire controversy

doctrine to be "of sufficient importance to merit discussion"),

certif. denied, 224 N.J. 527 (2016). "[T]he Nieder rule's

exceptions are most fruitfully applied where the focal issue is

entirely a question of law, in respect of which lower court

determinations are accorded limited deference." Am. Civil

Liberties Union of N.J. v. Cty. of Hudson, 352 N.J. Super. 44,

72 (App. Div. 2002). For the following reasons, we relax

Nieder's restrictions and consider defendant's constitutional

arguments.

 11 A-3230-14T2
 The issue defendant now raises is of significant importance

to defendant, his son and other potential litigants in cases of

this nature. As we said nearly twenty years ago:

 This case is an example of a tragic but
 recurring dilemma in certain family court
 cases involving allegations of child sexual
 abuse. On the one hand, there are clearly
 cases of imagined or even fabricated charges
 against a parent, especially when raised
 during the pendency of divorce proceedings.
 For a parent to stand accused of such an
 offense is devastating both to that
 individual, and to the child's lifelong
 relationship with the parent. On the other
 hand, proof of such abuse, especially
 involving a very young child, is rarely
 clear, and the potential danger to a child
 from a reoccurrence, if the suspicions and
 accusations are well-founded, is enormous.

 [P.T. v. M.S., 325 N.J. Super. 193, 198
 (App. Div. 1999).]

Further, although the issue at trial was whether and under what

conditions should defendant's parenting time be restored, it is

entirely unclear whether defendant had an opportunity to address

potential judicially-imposed pre-conditions to any future

request he might make. Defendant might have properly moved for

reconsideration, but his failure to do so should not bar our

consideration of this significant issue. Moreover, the record

is complete, because both Hoch and Perry testified at length,

were subject to extensive cross-examination and defendant

eschewed any opportunity to present his own expert on the

 12 A-3230-14T2
subject of TMR or any necessary preconditions. Lastly, whether

the provisions violate defendant's constitutional rights raises

a purely legal issue, and even if the trial judge were afforded

the opportunity to consider the argument, we would review his

decision de novo. Motorworld, Inc. v. Beckendorf, 228 N.J. 311,

329 (2017).

 As a result, we move to the substance of defendant's

arguments.

 B.

 Our courts have long recognized "[t]he right of a parent to

raise a child and maintain a relationship with that child,

without undue interference by the state, is protected by the

United States and New Jersey Constitutions." N.J. Div. of Youth

& Family Servs. v. E.P., 196 N.J. 88, 102 (2008) (citations

omitted). Our court has held that "a parent's rights to the

care and companionship of his or her child are so fundamental as

to be guaranteed protection under the First, Ninth and

Fourteenth Amendments of the United States Constitution." Wilke

v. Culp, 196 N.J. Super. 487, 496 (App. Div. 1984), certif.

denied, 99 N.J. 243 (1985); see also N.J.S.A. 9:2-4 (declaring

it to be the State's public purpose "to assure minor children of

frequent and continuing contact with both parents after the

parents have separated or dissolved their marriage").

 13 A-3230-14T2
Therefore, "the law favors visitation and protects against the

thwarting of effective visitation[.]" Wilke, supra, 196 N.J.

Super. at 496.

 "That fundamental parental right, however, is not without

limitation. The State has a basic responsibility, as parens

patriae, to protect children from serious physical and

psychological harm, even from their parents." E.P., supra, 196

N.J. at 102 (citation omitted). A parent's custody or

visitation "rights may be restricted, or even terminated, where

the relation of one parent (or even both) with the child cause

emotional or physical harm to the child, or where the parent is

shown to be unfit." Wilke, supra, 196 N.J. Super. at 496.

 "New Jersey's privilege against self-incrimination,

although not enshrined in the State Constitution, is deeply

rooted in this State's common law and codified in both statute

and an evidence rule[,]" State v. Muhammad, 182 N.J. 551, 567

(2005), and "offers broader protection than its federal

counterpart under the Fifth Amendment." Id. at 568. Pursuant

to N.J.S.A. 2A:84A-19, and its equivalent, N.J.R.E. 503, every

person in New Jersey "has a right to refuse to disclose in an

action . . . any matter that will incriminate him or expose him

to penalty . . . ."

 [A] matter will incriminate (a) if it
 constitutes an element of a crime against

 14 A-3230-14T2
 this State, or another State or the United
 States, or (b) is a circumstance which with
 other circumstances would be a basis for a
 reasonable inference of the commission of
 such a crime, or (c) is a clue to the
 discovery of a matter which is within
 clauses (a) or (b) above; provided, a matter
 will not be held to incriminate if it
 clearly appears that the witness has no
 reasonable cause to apprehend a criminal
 prosecution. . . .

 [N.J.S.A. 2A:84A-18; N.J.R.E. 502.]

Although the orders under review do not define the necessary

prerequisites of defendant's admission of wrongdoing, based upon

the evidence at trial and the judge's factual findings and

conclusions, it can be presumed that defendant would have to

admit he sexually assaulted Richard. See N.J.S.A. 2C:14-2(b)

(defining sexual assault as sexual contact between a victim less

than thirteen years of age by an actor at least four years

older). A prosecution for a violation of N.J.S.A. 2C:14-2(b)

may be commenced at any time. N.J.S.A. 2C:1-6(a)(1). As a

result, defendant's admission of "wrongdoing," whenever made,

potentially exposes him to criminal liability.

 "Both the United States Supreme Court and our New Jersey

courts have consistently held that the state may not force an

individual to choose between his or her Fifth Amendment

privilege and another important interest because such choices

are deemed to be inherently coercive." State v. P.Z., 152 N.J.

 15 A-3230-14T2
86, 106 (1997). It does not matter whether the particular

proceeding is itself a criminal prosecution. See ibid.

(collecting cases). Rather, "the Fifth Amendment is violated

'when a State compels testimony by threatening to inflict potent

sanctions unless the constitutional privilege is surrendered.'"

Id. at 106-07 (quoting Lefkowitz v. Cunningham, 431 U.S. 801,

805, 97 S. Ct. 2132, 2135, 53 L. Ed. 2d 1, 7 (1977)).

 In P.Z., the Court considered "whether a caseworker from

the [Division] must give Miranda warnings to a parent prior to a

non-custodial interview related to a child abuse investigation."

Id. at 92. The defendant acknowledged he was not in custody at

the time, id. at 102, but argued "his statement was obtained in

a similarly coercive manner because he was faced with an implied

threat that his children would not be returned unless he

admitted responsibility for his youngest daughter's injuries."

Id. at 107.

 Citing two out-of-state decisions, which we discuss below,

the Court concluded, "Although an admission of abuse may aid in

the rehabilitative process, termination of custody is not

automatic on invocation of the privilege. We therefore consider

inapplicable those cases holding unconstitutional a requirement

that an individual choose between the right to remain silent and

another vital interest." Id. at 108. The Court recognized a

 16 A-3230-14T2
distinction between a "direct threat" to a vital interest or a

"previously held benefit" and, "instead, a possibility that

therapeutic outcomes will be determinative of parental rights."

Ibid. It explained:

 [The defendant] was not asked to choose
 between his children and the exercise of his
 right to remain silent. If he abused his
 daughter, and if he refused to acknowledge
 his acts of abuse, he would find it
 difficult to demonstrate that he could care
 for his children without harming them. This
 was the risk he faced. [The Division's
 caseworker] did not threaten him with
 termination of his parental rights if he did
 not confess; nor did she tell him that the
 only way he could get his children back was
 to confess. We conclude that [the]
 defendant's statement . . . was not coerced
 in violation of his Fifth Amendment
 privilege against self-incrimination.

 [Id. at 209.]

 Here, however, the orders directly threaten defendant's

parental rights, because defendant may not petition the Family

Part for modification unless and until he waives his privilege

against self-incrimination and admits "wrongdoing." The

decisions of several of our sister states have explained the

distinction drawn by the Court in P.Z., between compelled self-

incrimination — in violation of constitutional rights — and

incriminatory statements that might be necessary for meaningful

reunification therapy to begin.

 17 A-3230-14T2
 In In re Welfare of J.W., 415 N.W.2d 879, 880-81 (Minn.

1987), a case cited by the P.Z. Court, the defendant-parents

challenged a dispositional order that required them to undergo

psychological evaluations, which included explanation of the

circumstances that led to the death of a two-year old child in

their care. The State threatened to terminate their parental

rights if they would not agree. Id. at 881. The parents

objected claiming the order violated their constitutional right

against self-incrimination. Ibid. The court concluded "that

the trial court's order, to the extent it requires appellants to

incriminate themselves, violates appellants' Fifth Amendment

rights and is unenforceable." Id. at 883. However, the court

made clear the limits of the parents' privilege:

 While the state may not compel therapy
 treatment that would require appellants to
 incriminate themselves, it may require the
 parents to otherwise undergo treatment.
 Therapy, however, which does not include
 incriminating disclosures, may be
 ineffective; and ineffective therapy may
 hurt the parents' chances of regaining their
 children. These consequences lie outside
 the protective ambit of the Fifth Amendment.

 . . . .

 . . . In the lexicon of the Fifth
 Amendment, the risk of losing the children
 for failure to undergo meaningful therapy is
 neither a "threat" nor a "penalty" imposed
 by the state. It is simply a consequence of
 the reality that it is unsafe for children

 18 A-3230-14T2
 to be with parents who are abusive and
 violent.

 [Id. at 883-84.]

 The Vermont Supreme Court reached a similar conclusion in

In re M.C.P., 571 A.2d 627 (Vt. 1989), another case cited by the

P.Z. Court. There, the trial court ordered continued custody of

the minor with the child welfare agency "until the parents g[ot]

over the extreme denial of any abuse and seek counseling to

overcome these problems . . . ." Id. at 640. Adopting the

analysis of the court in J.G.W., the court concluded that

portion of the dispositional order "may be read as a requirement

that the parents waive their Fifth Amendment Privilege," and

then struck that provision from the order. Id. at 641. The

court explained:

 The trial court cannot specifically require
 the parents to admit criminal misconduct in
 order to reunite the parents to admit
 criminal misconduct in order to reunite the
 family. On the other hand, the parents must
 demonstrate to the court that it is in the
 juvenile's best interest to return custody
 to the parents in the face of the serious
 misconduct the court found they engaged in.
 While the court may not specify that the
 only route to reunification is an
 abandonment of the self-incrimination right,
 the parents must expect that the court and
 [the child welfare agency] will act based on
 the findings of extreme parental abuse. If
 the parents can find a way to show that they
 have become good parents, without admitting
 to any misconduct, and that a restoration of
 custody of the juvenile to them is in the

 19 A-3230-14T2
 best interest of the child and is safe, the
 court may not foreclose the option. If the
 court finds in the future, however, that the
 parents have made no progress to
 reunification because their denial prevents
 effective therapy, it may act on that
 finding to the parents' detriment without
 offending the Fifth Amendment privilege.

 [Ibid.; accord Mullin v. Phelps, 647 A.2d
 714, 724-25 (Vt. 1994).]

 Most courts around the country have recognized the

distinction between a court-compelled waiver of a parent's right

against self-incrimination, which violates the Fifth Amendment,

and an order compelling a parent's participation in counseling

or reunification services, the success of which might hinge on

the admission of abuse. See, e.g., In re A.W., 896 N.E.2d 316,

326 (Ill. 2008) ("[A] trial court may order a service plan that

requires a parent to engage in effective counseling or therapy,

but may not compel counseling or therapy requiring the parent to

admit to committing a crime."); In the Interest of C.H., 652

N.W.2d 144, 150 (Iowa 2002) ("The State may require parents to

otherwise undergo treatment, but it may not specifically require

an admission of guilt as part of the treatment."); Minh T. v.

Ariz. Dep't of Econ. Sec., 41 P.3d 614, 618 (Ariz. Ct. App.

2001) (recognizing "a distinction between a treatment order that

requires parents to admit criminal misconduct and one that

merely orders participation in family reunification services");

 20 A-3230-14T2
State v. Suzette M. (In re Clifford M.), 577 N.W.2d 547, 558-59

(Neb. Ct. App. 1998) (reversing termination of parental rights

"solely because [the defendant] refused to waive her right to be

free from self-incrimination," but recognizing court may order

enrollment in therapy as "essential to a particular parent's

rehabilitation"), appeal dismissed, 606 N.W.2d 742 (Neb. 2000).

 No reported New Jersey decision has squarely addressed this

issue,5 and we find the cited out-of-state decisions to be

persuasive. Here, the November 2013 and January 2014 orders

conditioned any future request by defendant for parenting time

upon his admission of "wrongdoing," which we presume, based on

Perry's testimony, means defendant must admit that he sexually

abused Richard. Such a requirement compels defendant to waive

his privilege against self-incrimination and violates his rights

under the Fifth Amendment and our State Constitution.

 Although defendant has not specifically challenged the

balance of the November 2013 and January 2014 orders that impose

5
 In In re Guardianship of D.J.M., 325 N.J. Super. 150, 151 (Ch.
Div. 1999), the Family Part considered "whether to stay a
guardianship proceeding pending the outcome of a simultaneous
criminal proceeding arising out of the same facts." While
finding the defendant's Fifth Amendment arguments to be
"compelling," the court concluded the child's interest in
permanency outweighed the defendant's rights, and suggested the
Legislature should grant "use immunity" to parents in the
defendant's position. Id. at 162. Because the issues in this
case are significantly different, we express no opinion about
the court's holding in D.J.M.

 21 A-3230-14T2
other preconditions upon him "[p]rior to any application for

parenting time," and further provide he may apply "for

consideration of parenting time" only if he completes these

requirements, we conclude these portions of the orders must also

be vacated.

 In Parish v. Parish, 412 N.J. Super. 39, 48 (App. Div.

2010), we recognized that a citizen's constitutional right to

access to the courts applied to matters in the Family Part.

While reaffirming the court's inherent power "to control the

filing of frivolous motions and to curtail 'harassing and

vexatious litigation,'" ibid. (quoting Rosenblum v. Borough of

Closter, 333 N.J. Super. 385, 387, 391 (App. Div. 2000)), we

nevertheless reversed the judge's order enjoining the plaintiff-

father from filing any future motions, including enforcement of

parenting time requests, unless the parties and their attorneys

first conducted a settlement conference. Id. at 44. We

concluded that "in the absence of any finding of a need to

control baseless litigation, the balance struck by the motion

judge in favor of restricting access to the court was an abuse

of discretion." Id. at 51.

 We reach the same conclusion here. Undoubtedly, this

litigation has been protracted, contentious and, on occasion,

unnecessary. However, defendant has consistently denied that he

 22 A-3230-14T2
abused his son, and so testified at trial. Clearly, the judge

rejected this testimony and found, by clear and convincing

evidence, that defendant had sexually abused Richard. The judge

also clearly accepted Perry's testimony that not only was

defendant's admission of wrongdoing a necessary precondition to

effective therapy and future parenting time, but also that

defendant must undergo individual therapy and submit to a

psycho-sexual evaluation before the process can begin.

 Putting aside preconditioning any application of

defendant's admission of wrongdoing, which, as explained above,

violated defendant's constitutional rights, we conclude

imposition of these other preconditions violated defendant's

right to invoke the equitable powers of the Family Part to

modify its order denying him any parenting time. It may well be

that any future application may fail, absent defendant's efforts

to address the very issues Perry saw as vital to the gradual

reinstitution of parenting time. However, the court should not

reach that conclusion in advance of such a request. Although

the judge undoubtedly made a good faith attempt to foreclose

unnecessary motion practice in what had been an excessively

litigated case, these provisions of the November 2013 and

January 2014 orders improperly restrict defendant's right to

seek further review by the court.

 23 A-3230-14T2
 We vacate Section 3 and 4 of the November 2013 order and

sections 4 and 5 of the January 2014 order.

 [At the court's direction, Section III of
 its opinion, which concerns discrete issues,
 has been redacted from the published
 opinion, because it does not meet the
 criteria set by R. 1:36-2(d) for publication.
 The published parts of the opinion continue
 as follows.]

 For the reasons stated, we affirm in A-3230-14, except as

to those provisions of the November 2013 and January 2014 orders

which we have now vacated.

 24 A-3230-14T2