2025 IL App (4th) 241498-U

NOS. 4-24-1498, 4-24-1499, 4-24-1500, 4-24-1501 cons.

NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 3, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Mo. C., a Minor | ) | Appeal from the |
| (The People of the State of Illinois, | ) | Circuit Court of |
|       Petitioner-Appellee, | ) | Stephenson County |
|       v. (4-24-1498) | ) | No. 22JA23 |
| Marquis C., | ) | |
|       Respondent-Appellant). | ) | |
| _____ | ) | |
| *In re* Mon. C., a Minor | ) | No. 22JA24 |
| (The People of the State of Illinois, | ) | |
|       Petitioner-Appellee, | ) | |
|       v. (4-24-1499) | ) | |
| Marquis C., | ) | |
|       Respondent-Appellant). | ) | |
| _____ | ) | |
| *In re* Ma. C., a Minor | ) | No. 22JA25 |
| (The People of the State of Illinois, | ) | |
|       Petitioner-Appellee, | ) | |
|       v. (4-24-1500) | ) | |
| Marquis C., | ) | |
|       Respondent-Appellant). | ) | |
| _____ | ) | |
| *In re* Me. C., a Minor | ) | No. 22JA26 |
| (The People of the State of Illinois, | ) | |
|       Petitioner-Appellee, | ) | |
|       v. (4-24-1501) | ) | Honorable |
| Marquis C., | ) | Peter McClanathan, |
|       Respondent-Appellant). | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices Steigmann and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in finding respondent father unfit and in terminating his parental rights.

¶ 2    Respondent, Marquis C., appeals the trial court's termination of his parental rights to his four children. He argues the court erred in finding him unfit. We affirm.

¶ 3                          I. BACKGROUND

¶ 4    Respondent and Karah R. are the parents of Mo. C. (born in October 2014), Mon. C. (born in October 2015), Ma. C. (born in September 2017), and Me. C. (born in October 2018). (Karah is also the mother of a fifth child involved in the underlying proceedings. However, parental rights to that child are not at issue on appeal, nor is Karah, whose parental rights were similarly terminated below, a party to this appeal.) In June 2022, the State filed petitions for adjudication of wardship in consolidated cases involving the minors (Stephenson County case Nos. 22-JA-23, 22-JA-24, 22-JA-25, and 22-JA-26). It alleged the minors were neglected because their environment was injurious to their welfare due to Karah's ongoing substance abuse issues, the minors' home being unreasonably dirty and unsanitary, and Karah's "history of failing to properly supervise or care for the well[-]being of the minor[s]." (see 705 ILCS 405/2-3(1)(b) (West 2022)).

¶ 5    In September 2022, the trial court conducted an adjudicatory hearing. Karah stipulated that the minors were neglected due to her ongoing substance abuse issues. Respondent joined in her stipulation, and the court entered an adjudicatory order finding the minors neglected. In November 2022, the court conducted a dispositional hearing and entered an order making the minors wards of the court and placing them in the custody and guardianship of the Illinois Department of Children and Family Services (DCFS). In setting forth its decision at the hearing, the court noted respondent was imprisoned in the Illinois Department of Corrections and had "no prospect of caring for the children in any capacity."

¶ 6    In March 2024, the State filed a petition to terminate both Karah's and respondent's

parental rights to Mo. C., Mon. C., Ma. C, and Me. C. The State later amended its petition, alleging, relevant to this appeal, that respondent was unfit to parent the minors because he failed to make either reasonable efforts to correct the conditions that were the basis for the minors' removal from his care (750 ILCS 50/1(D)(m)(i) (West 2022)) or reasonable progress toward their return to his care (*id.* § 1(D)(m)(ii)) from (1) "September 27, 2022 (the adjudication date) to June 27, 2023" and (2) "April 2023 to January 2024." The State also alleged that respondent failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (*id.* § 1(D)(b)). Finally, it maintained that termination of respondent's parental rights was in the minors' best interests.

¶ 7        In September 2024, the trial court conducted a fitness hearing. Kelly Barger testified that she worked for Lutheran Social Services of Illinois and had been the minors' caseworker since their cases were opened. She recalled meeting with respondent in January 2024, or some time "probably more than this past January [2024]." Barger could not remember the precise date of the meeting but recalled that both respondent and his mother were present and that they discussed respondent having visits with the minors while his mother would supervise. Barger testified she and respondent further discussed the services he needed to complete and that respondent "agreed to do all of those things."

¶ 8        A couple of weeks before their in-person meeting, Barger also had a phone conference with respondent that included respondent's mother and Barger's supervisor. The phone conference occurred after the minors' cases had "been open for some time." Barger asserted that from the beginning of the case, she tried contacting respondent by phone, through both calls and texts. Respondent would sometimes text her "to see if the kids needed anything for school, clothes or school supplies." However, the phone conference was the first opportunity she had to

substantively discuss with respondent what was expected of him.

¶ 9 Barger testified respondent's recommended services included a substance abuse assessment, a mental health assessment, regular drug screens, and individual counseling "if recommended." Ultimately, however, respondent did not undergo any assessments and had "not done any of the things that [she] recommended." Barger stated respondent was "in and out of jail throughout the entirety of the [minors'] case[s]" and that she had no contact with him during his periods of incarceration. She also stated that respondent had her contact information "to get [services] started" and that she did try to communicate with him about engaging in services. Barger testified she "did a referral for domestic violence services," but respondent did not attend.

¶ 10 According to Barger, respondent participated in approximately 20 visits with the minors. Visits were supposed to occur every other Sunday for several hours and, "for a while," respondent visited "pretty regular." Barger testified visits ended in March 2024, after she was informed that there were people being allowed at visits that should not have been. She stated she also received a report from one of the children that respondent attended a visit with his paramour and "was slapping her in front of the children."

¶ 11 As part of its case, the State asked the trial court to take judicial notice of the September 2022 adjudicatory order and the November 2022 dispositional order, as well as permanency orders dated April 11, 2023, October 3, 2023, and March 19, 2024. The court took judicial notice of those prior orders without objection. The record reflects each permanency order contained the finding that respondent had not made either reasonable progress or reasonable efforts toward the return of the minors to his care.

¶ 12 Respondent testified at the hearing on his own behalf, stating he was incarcerated, with an expected release date of June 9, 2025. He recalled speaking with the minors' caseworker

in approximately February 2024. The caseworker recommended services for him, including "[a]lcohol classes, *** mental health and a few more." Respondent acknowledged that he had not "participated in any of those types of services" but stated he did participate in biweekly visits with his children at his mother's house. According to respondent, he also visited with his children prior to the meeting he had with their caseworker in early 2024. Respondent admitted that he was incarcerated "off and on" while the minors' cases were pending, including when they were first taken into care, and that he had no communication with them while incarcerated.

¶ 13 At the conclusion of the fitness hearing, the trial court stated it would reduce its "stage 1 findings to writing." On September 30, 2024, the court entered a written order finding respondent unfit. The court noted the unfitness grounds alleged by the State and then summarized its findings based on the evidence presented, stating as follows:

> "[Respondent] was in and out of custody during the pendency of these cases. [Respondent] had various levels of interaction with the agency. He verbally expressed a willingness to do whatever was required of him by the agency. The testimony established [respondent] was required to obtain a substance abuse assessment, mental health assessment, participate in drug testing, and participate in visits. When [respondent] was in custody, he would not keep in contact with the agency. He never showed any proof of completion of a substance abuse assessment, mental health assessment or participation in a drug test. However, when he was out of custody, [respondent] did participate regularly in visits with the minors and engaged in approximately [20] visits with the children. Visits ended in March 2024 in part due to a concern on who [respondent] was bringing to the visits and conduct by [respondent] to other individuals who were present at the visits."

The court then addressed each specific unfitness ground alleged by the State, concluding as follows:

"On April 11, 2023, [respondent] was found to have not made reasonable efforts or progress towards the permanency goal. The testimony, coupled with the findings, establishes by clear and convincing evidence, that [respondent] is unfit pursuant to paragraph 10a of the amended petition.

On October 3, 2023, [respondent] was found to have not made reasonable efforts or progress towards the permanency goal. While this period overlaps the end of the first period after adjudication, it is a separate nine-month period, and the Court may find a lack of reasonable efforts and progress in both periods. The testimony, coupled with the findings, establishes by clear and convincing evidence, that [respondent] is unfit pursuant to paragraph 10b of the amended petition.

[Respondent], when out of custody, consistently attended visits with the children. *** He also generally, when out of custody, stayed in contact with the agency. Furthermore, the testimony established he contacted the agency about providing clothes and school supplies for the minor[s]. While such efforts did not rise to the level of reasonable efforts or progress towards a return home goal, they do show a reasonable degree of interest, concern[,] or responsibility for the children, and as such the Court finds the [S]tate did not prove [respondent] unfit by clear and convincing evidence pursuant to paragraph 10c of the amended petition."

¶ 14    In October 2024, the trial court conducted a best-interests hearing. The same month, it entered a written order finding termination of respondent's parental rights was in the minors' best interests and terminating his parental rights to Mo. C., Mon. C., Ma. C., and Me. C.

¶ 15    This appeal followed.

¶ 16                    II. ANALYSIS

¶ 17    On appeal, respondent challenges the trial court's termination of his parental rights, arguing the court erred in finding he was unfit to parent his minor children. He contends the court erred by analyzing evidence outside of the applicable nine-month periods alleged by the State and that its decision was otherwise against the manifest weight of the evidence. Respondent does not contest the court's best-interests finding.

¶ 18    Pursuant to the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-29(2) (West 2022)), a trial court may terminate parental rights where it finds, by clear and convincing evidence, that a parent is unfit based on the grounds set forth in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)) and that termination is in the minor's best interests. *In re M.I.*, 2016 IL 120232, ¶ 20. "A parent's rights may be terminated if even a single alleged ground for unfitness is supported by clear and convincing evidence." *In re Gwynne P.*, 215 Ill. 2d 340, 349 (2005). On review, the court's finding that a parent is unfit will not be reversed unless it is against the manifest weight of the evidence. *M.I.*, 2016 IL 120232, ¶ 21. A court's decision "is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent." (Internal quotation marks omitted.) *Id.*

¶ 19    As indicated, respondent first contends the trial court improperly considered evidence outside of the State's alleged nine-month periods when finding him unfit for failing to make reasonable efforts or progress with respect to the minors' cases. He contends that although the relevant nine-month periods extended, at most, "through January 2024," the court, nevertheless, made factual findings pertaining to his "visitation terminating in March of 2024 and his behavior relating thereto." The State initially responds that respondent forfeited this issue by

- 7 -

failing to raise it with the trial court. In reply, respondent argues that his forfeiture should be excused under the plain-error doctrine.

¶ 20 Arguments not raised with the trial court are forfeited on review. *In re K.B.*, 2019 IL App (4th) 190496, ¶ 59 ("Any objection a party failed to make in the proceedings below is regarded, on appeal, as procedurally forfeited."); *In re M.W.*, 232 Ill. 2d 408, 430 (2009) (stating forfeiture principles apply in proceedings under the Juvenile Court Act). Under the plain-error doctrine, a reviewing court may consider unpreserved error where a clear or obvious error occurred and (1) the evidence is closely balanced or (2) the error is so serious that it affected the fairness of the proceedings and challenged the integrity of the judicial process. *In re D.D.*, 2022 IL App (4th) 220257, ¶ 31. The first step in a plain-error analysis is to determine whether any error occurred at all. *Id.*

¶ 21 Here, we find no error by the trial court. The record shows the State alleged respondent was unfit because he failed to (1) make reasonable efforts to correct the conditions that were the basis for the minors' removal during two distinct nine-month periods—September 27, 2022, to June 27, 2023, and April 2023 to January 2024 (750 ILCS 50/1(D)(m)(i) (West 2022)); (2) make reasonable progress toward the minors' return to his care during the same two distinct nine-month periods (*id.* § 1(D)(m)(ii)); and (3) maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (*id.* § 1(D)(b)). Notably, under section 1(D)(b) of the Adoption Act, there is no specific time frame to which the trial court must limit its findings when determining parental unfitness. *In re M.J.*, 314 Ill. App. 3d 649, 656 (2000) (stating that "in determining reasonable efforts or reasonable progress the trial court must limit its findings to a specific time frame, whereas in determining the degree of interest, concern, or responsibility as to the welfare of the children no such time frame exists"). Thus, to support its allegation under section

1(D)(b) of the Adoption Act in this case, the State was free to present evidence that extended beyond the specific nine-month periods it alleged in connection with its other unfitness grounds.

¶ 22　　　　The record further shows that the trial court entered a written order finding that respondent was unfit based upon his failure to make reasonable efforts and reasonable progress during the State's two alleged nine-month periods but not his alleged failure to maintain a reasonable degree of interest, concern, or responsibility as to his children's welfare. In setting forth its decision, the court generally stated its factual findings based upon the evidence presented before specifically and separately addressing each alleged unfitness ground. Although the court referenced evidence from March 2024 when stating its general findings, nothing in its more specific comments directed toward each individual ground reflects that it relied on that evidence when considering the grounds that had an evidentiary time limitation ending in January 2024. Moreover, the court's comments clearly established its awareness of the applicable nine-month periods attached to the State's reasonable efforts and reasonable progress grounds. In particular, when addressing the reasonable efforts and reasonable progress grounds, the court referenced only the two permanency orders dated within the relevant nine-month periods, without mentioning a third order dated March 19, 2024. It also noted that the State alleged overlapping nine-month periods and that it could find a lack of reasonable efforts or reasonable progress "in both periods." Under the circumstances presented, we find no clear or obvious error in the trial court's analysis and, thus, no plain error.

¶ 23　　　　Respondent further argues that the trial court's finding that he was unfit was otherwise against the manifest weight of the evidence. However, fatal to his claim, respondent has effectively failed to challenge all of the grounds upon which the court determined him unfit.

¶ 24　　　　As discussed, a trial court's finding of unfitness may be supported by a single

ground if properly proven. *Gwynne P.*, 215 Ill. 2d at 349. Additionally, on review, an appellant concedes unfitness based upon any ground that is left unchallenged. *In re D.L.*, 326 Ill. App. 3d 262, 268 (2001) (finding the respondents' failure to challenge one of the several grounds upon which they were found unfit amounted to a concession that they were unfit on that unchallenged ground and that it was unnecessary to address their remaining arguments).

¶ 25          Again, the trial court found that during the relevant nine-month periods, respondent failed to make both (1) reasonable efforts to correct the conditions that were the basis of the minors' removal from his care and (2) reasonable progress toward the return of the minors to his care. Significantly, however, in the argument section of his appellant's brief, respondent effectively raised no challenge to the court's finding that he failed to make *reasonable efforts*. His only apparent reference to that ground is found in the following two sentences:

> "Worth noting is that there was no testimony relating to the conditions that were the basis for the removal of the child [*sic*] from the respondent. Therefore, the only allegation that could support the finding of unfitness would be that the respondent failed to make reasonable progress toward the return of the child [*sic*]."

¶ 26          The argument section of an appellant's brief must "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). "Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." *Id.* Respondent's failure to present any reasoned argument or citation to legal authority to support a challenge to the trial court's finding that he failed to make reasonable efforts to correct the conditions that were the basis for the minors' removal from his care results in his forfeiture of that argument on appeal. Also, his failure to properly challenge that ground is fatal to his claim that the court erred in finding

him unfit.

¶ 27 Finally, even setting respondent's forfeiture aside, we would find that ample evidence demonstrated his unfitness based upon the ground that he does clearly challenge on appeal—his failure to make reasonable progress toward the return of the minors to his care from (1) September 27, 2022, to June 27, 2023, and (2) April 2023 to January 2024.

¶ 28 Section 1(D)(m)(ii) of the Adoption Acts defines an unfit parent as one who fails "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the [neglect] adjudication." 750 ILCS 50/1(D)(m)(ii) (West 2022). "Reasonable progress is an objective review of the steps the parent has taken toward the goal of reunification and examines the demonstrability and quality of those steps." *In re Dar. H.*, 2023 IL App (4th) 230509, ¶ 53. "Reasonable progress exists when the trial court can conclude that, in the near future, it will be able to order the children returned to parental custody." *Id.* Regarding reasonable progress, our supreme court has stated as follows:

> "[T]he benchmark for measuring a parent's 'progress toward the return of the child' under section 1(D)(m) of the Adoption Act encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001).

Additionally, time that a parent spends in prison does not toll the nine-month period during which reasonable progress must be made. *In re J.L.*, 236 Ill. 2d 329, 341 (2010).

¶ 29 The evidence before the trial court showed the minors were adjudicated neglected in September 2022. Respondent does not dispute that he was aware that the minors were taken into

care, and the court's adjudicatory and dispositional orders indicate that he was admonished regarding the need to cooperate with DCFS and comply with services. Barger, the minors' caseworker, testified that from the beginning of the minors' cases, she attempted to communicate with respondent by phone. Respondent would sometimes send her text messages to ask if the minors needed clothing or school supplies. However, he had no meaningful interactions with her regarding his services until sometime prior to January 2024 and after the cases had "been open for some time." Ultimately, despite initially agreeing to do what was required of him, respondent did not participate in or complete any of his recommended services. Further, the permanency orders that were judicially noticed by the court showed repeated findings within the relevant nine-month periods that respondent failed to make reasonable progress toward the return of the minors to his care.

¶ 30     The evidence also showed that respondent was incarcerated "off and on" while the underlying cases were pending. He admitted that he was in custody when the minors were initially taken into care and at the time of the September 2024 fitness hearing. During his periods of incarceration, respondent had no communication with Barger or the minors. On appeal, respondent emphasizes that he expects to be released from custody in June 2025. However, even if true, nothing in the evidence presented supports a finding that the children could be returned to his care either at that time or soon thereafter.

¶ 31     The trial court's determination that respondent failed to make reasonable progress during the two nine-month periods alleged by the State—from the September 2022 neglect adjudication to January 2024—was supported by the record and not against the manifest weight of the evidence. Accordingly, we find no error in the court's termination of respondent's parental rights.

¶ 32                                    III. CONCLUSION

¶ 33          For the reasons stated, we affirm the trial court's judgment.

¶ 34          Affirmed.